## STATE OF ILLINOIS EX REL. BARBARA A. SHANNON v. KENNETH H. STERLING.

80 N. W. (2d) 13.

November 30, 1956—No. 36,911.

*George M. Scott,* County Attorney, and *Douglas X. Juneau,* Assistant County Attorney, for appellant.

*James W. Ronning,* for respondent.

MATSON, JUDGE.

In a two-state proceeding brought under the Uniform Reciprocal Enforcement of Support Act to compel a divorced Minnesota father to pay for the support of his three minor children who were removed by the mother to Illinois without his consent or approval of court, the initiating petitioner of Illinois, for and in behalf of the children, appeals from an order dismissing the proceeding.

The Uniform Reciprocal Enforcement of Support Act, now in force in all 48 states[1] in substantially the same form (or the equivalent thereof), was enacted by Minnesota in 1951[2] and is now codified as M. S. A. 518.41 to 518.52. The act, as applied to the relationship of parent and child, was designed for the extension and the better enforcement of the obligations of support (§ 518.41) by enabling two states by reciprocal legislation and joint action to cooperate effectively in compelling a parent located in one state to furnish support for his dependent children located in the other state.[3] The two-state action is initiated by or in behalf of the dependent children in the state where they are located and is terminated in the other state (responding state) where the parent owing the duty of support (the obligor) is found.

---

[1] It has also been adopted in Alaska, Guam, Hawaii, Puerto Rico, and the Virgin Islands. See, 9A Uniform Laws Annotated, 1955 pocket part, pp. 68, 69.

[2] L. 1951, c. 122.

[3] See articles by W. J. Brockelbank in 37 A. B. A. J. 93 and in 17 Mo. L. Rev. 1.

This proceeding was initiated in Illinois by Barbara A. Shannon for and in behalf of her children, Patrick Sterling, 11 years of age; Terrance Sterling, 9 years of age; and Annette Sterling, 4 years of age. The defendant father lives in Minnesota.

We have these stipulated facts: The parents were married in Minnesota on July 13, 1942, and the aforesaid minors were born of that marriage. An absolute divorce was granted to the parties on December 18, 1952, by the Hennepin County District Court. The divorce decree required the husband to pay $30 weekly for the support of the children. Custody of the children was granted to the mother *subject to the right of the father to visit said children at reasonable times.* The father faithfully paid all weekly support payments up to and including a payment made on July 2, 1955. Since the latter date he has made no support payments. On or about July 1, 1955, the wife, who now appears herein as a petitioner for and in behalf of the minor children, removed the children from Minnesota to Illinois without the consent of the father and without approval of the district court.

The trial court dismissed the proceeding herein on the ground that, since the father had been deprived of his right of visitation by the act of the mother in removing the children from Minnesota to Illinois without the father's consent or approval of court, he was thereby relieved of his obligation to pay for their support. The trial court certifies to this court the following question for determination:

"Where, * * * it is admitted that the petitioner removed minor children of the parties from the State of Minnesota to the State of Illinois without order of court or the consent of the respondent in violation of the terms of a Minnesota divorce decree, can the respondent-father be relieved of his common law obligation to support said minor children under the Uniform Reciprocal Enforcement of Support Act, Section 518.41 to Section 518.53 Minnesota Statutes Annotated, so long as he is deprived of the right of visitation?"

At the outset it is to be observed that the application of the Uniform Reciprocal Enforcement of Support Act (hereinafter referred to as the uniform act) is not limited to those cases where

the father abandons his duty of support by fleeing to another jurisdiction. This is true despite the fact that the immediate occasion which gave rise to the act was the acute need for an inexpensive remedy against a father who deserts and abandons his family and flees to another jurisdiction and thereby, for all practical purposes, escapes his obligation because the wife and children have neither the facilities nor the means to pursue him and institute suit in the state to which he has fled. The provisions of the act, as finally drafted and enacted, were, however, designed to meet the broader need *arising from any neglect or breach of legal duty in providing support for dependent children where the obligor and such dependent children are located in two different states.* By its terms the act applies to any situation where there is a breach of legal duty to support dependent children located in another state, and the flight of the father or obligor from the initiating jurisdiction, or from the jurisdiction where the legal obligation of support arose, is not a controlling fact. It follows that, in a proper case, the act may be applied not only where the need for two-state action has been created by a roving husband but also where the need arises because of a roving wife.[4] Whether the wife's removal of the children to another state legally justifies the father in discontinuing his support payments is a separate question to be determined under the laws of Minnesota.

In passing upon the husband's liability for support payments during the period he is denied the right of visitation by the wife's unauthorized removal of the children to another jurisdiction, we shall first consider his liability for payments which have already accrued and, secondly, his obligation to make future payments.

■ The custody of minor children; parental visitation rights; and the duty of supporting the children are governed by the laws of this state where the husband and wife resided when the decree of absolute divorce was obtained. In this two-state proceeding to

---

[4]Smith v. Smith, 131 Cal. App. (2d) 764, 770, 281 P. (2d) 274, 278; Daly v. Daly, 39 N. J. Super. 117, 126, 127, 120 A. (2d) 510, 514, 515; see, Mahan v. Read, 240 N. C. 641, 83 S. E. (2d) 706.

compel support, Minnesota is the responding state. Insofar as here pertinent, § 518.44 provides:

"When the court of a responding state determines to enforce the duties of support owed under the law of this state, the law of this state is declared to be:

"(1) *Unless relieved by conduct of the obligee,* an obligor present in this state is bound by the duties of support imposed by the laws of this state regardless of the presence or residence of the obligee." (Italics supplied.)

In compliance with the above section we must ascertain the duties of the support imposed by Minnesota law. Section 518.42 of the uniform act sets forth the following pertinent definitions:

"Subd. 6. 'Law' includes both common and statute law.

"Subd. 7. 'Duty of support' includes a duty of support imposed or imposable by law or any court order, decree, or judgment, whether interlocutory, final, or incidental to a proceeding for divorce, legal or judicial separation, separate maintenance, or otherwise."

■ The Minnesota law as to the liability of the husband for the payment of unpaid installments of support money which have already accrued is set forth in Eberhart v. Eberhart, 153 Minn. 66, 68, 189 N. W. 592, wherein we said:

"The plaintiff has taken the child from the jurisdiction of the court. So long as she keeps him without the jurisdiction the defendant should be relieved from the payment of support money to accrue in the future *and that already accrued should not be enforced against him.*" (Italics supplied.)

Under the above rule it is clear that, where the wife, who by decree of divorce has been awarded the custody of minor children subject to the husband's right of reasonable visitation, deprives the husband of his right of visitation by removing the children from the state without the court's approval or without the husband's consent, the husband is relieved from the payments of all unpaid install-

ments of support money which have *theretofore* accrued during the period he has been so denied his right of visitation.[5]

■ The rule of the Eberhart case was approved and applied by this court in Anderson v. Anderson, 207 Minn. 338, 291 N. W. 508, involving a wife who violated an express provision of the divorce decree prohibiting her from taking the child of the parties out of the jurisdiction. It may be conceded that the language of the above quotation from the Eberhart case is broad enough to apply to future support payments as well as to those which have already accrued. The Eberhart rule, however, as to future installments of support money, was distinguished and modified by this court in Iverson v. Iverson, 243 Minn. 54, 66 N. W. (2d) 549, wherein the wife had defeated the husband's right of visitation by removing the children to California. In the Iverson case the trial court granted the wife's motion for a modification of the original divorce decree expressly to permit her to live with the children in California and to require the husband to pay for their support in the future. The husband's right of visitation, as granted by the original decree, was modified to provide that he exercise that right at the wife's California home. Upon the husband's appeal from the amended judgment and decree, this court said (243 Minn. 55, 66 N. W. [2d] 550):

"However, in the Eberhart case the allowance for support was based on a decree of separation which was rendered before removal of the child from the state was contemplated either by the court or by the parent having custody, and the decree therefore did not expressly permit the removal. A similar holding is found in Anderson v. Anderson, 207 Minn. 338, 291 N. W. 508. There, this court held that a mother who violated the terms of a divorce decree which expressly prohibited her from taking the child out of the jurisdiction was not entitled to enforce the support provisions of the decree against the father so long as she kept the child out of the state. * * *

[5]See Fjeld v. Fjeld, 201 Minn. 512, 277 N. W. 203, where the Eberhart case was distinguished and a father was not relieved from paying support money because the removal of the children from the state was necessary due to his failure to make support payments in accordance with the divorce decree.

"To apply the Eberhart and Anderson cases to the facts of this case would involve an unreasonable extension of their doctrine. Even if it is conceded that plaintiff's act in removing the children to California violated the original divorce decree by making visits so impractical as to amount to a denial of the visitation rights accorded to defendant, plaintiff did not request, and the court did not award, accrued support for the period during which the children were kept outside the state in violation of the original decree. Under the doctrine of the Eberhart case, it would have been improper for the court to do so. The court merely ordered support payments to begin from the date of the amended decree which permitted plaintiff to reside outside the state with the children. Obviously, from the date of its amendment, plaintiff was no longer in violation of the divorce decree, and the only question which remains is whether the court could properly amend the decree to require defendant to pay support thereafter while at the same time permitting plaintiff and the children to live without the state.

"We hold that the court did have this power, M. S. A. 518.18 in defining the powers of the court in custody matters provides:

" 'The court may afterward, from time to time, on the petition of either parent, revise and alter such order concerning the care, custody, and maintenance of the children, or any of them, and make such new order concerning them, as the circumstances of the parents and the benefit of the children shall require.'

"In addition to this general statutory grant of power, the action of the trial court complained of in this case was expressly approved by this court in Hasse v. Hasse, 232 Minn. 234, 45 N. W. (2d) 383. We there held that although a father could not be held in contempt of court under the original decree for failure to pay support for the period in which the mother resided with the child outside the jurisdiction, he, nevertheless, was obliged to comply with the amended decree which expressly authorized the mother to live outside the state and ordered the father to pay support from the date the decree was amended."

Under the holding of the Iverson and Hasse cases it follows that although a father, whose right of reasonable visitation under an original divorce decree has been defeated by the act of the wife in wrongfully removing the children from the jurisdiction, is relieved from the payment of support installments which have already accrued, *he is not so relieved as to future payments of support if the trial court, in the exercise of a sound discretion, amends the original decree with respect to his right of visitation and so as to permit the wife to reside with the children outside the state.*

Under the circumstances here existing, and in the light of the foregoing principles, may a trial court in a proceeding under the Uniform Reciprocal Enforcement of Support Act, despite the express terms of an original divorce decree, modify the husband's right of visitation and authorize the wife in a proper case to reside with the children outside the state and then compel the husband thenceforth to pay for the future support of the children? In answering that question we first turn to a construction of the uniform act itself and particularly to § 518.43 thereof which provides:

"The remedies provided in sections 518.41 to 518.52 are in addition to and not in substitution for any other remedies."

This section is expressive of a legislative intent that the act is to be construed, not merely as preserving all existing remedies intact, but as providing additional remedies which are supplementary and ancillary to all existing remedies. This construction is corroborated by the sweeping scope of the duty of support as defined in the above-quoted subd. 7 of § 518.42. It is also to be borne in mind that the Uniform Reciprocal Enforcement of Support Act is within the rule that a uniform law which is remedial in nature is to be liberally construed with reference to the object to be obtained. Commonwealth v. Shaffer, 175 Pa. Super. 100, 103 A. (2d) 430, 42 A. L. R. (2d) 761. In Daly v. Daly, 39 N. J. Super. 117, 128, 120 A. (2d) 510, 516, the court appropriately said:

"In construing the act the court must also be mindful of the injunction that every 'endeavor should be made by the courts to render

this statute operable, for the objectives of the legislation are very worthy.' "

Without violating its language, the act is to be construed to solve the problem of evil for which it was designed, and to this end all reasonable doubts are to be resolved in favor of the applicability of the statute to the particular case. State ex rel. Whatley v. Mueller (Mo. App.) 288 S. W. (2d) 405, 409, 410.[6]

In the light of this liberal construction, what is the relation between the uniform act and the regular divorce statutes? Section 518.18 of the latter permits the court, *on the petition of either parent,* to revise and alter the final decree concerning the care, custody, and maintenance of the children, as the circumstances of the parents and the benefit of the children shall require. Since the uniform act is to be construed to accomplish its controlling purpose of enforcing the duty of a father to support his children, *whether that duty is imposed or imposable by any law, court order, or decree* (§ 518.42, subd. 7), is there any justification for permitting that purpose to be defeated on the technical ground that the trial court is unable to modify the visitation and custodial provisions of its own final decree of divorce for no other reason than that neither parent has directly petitioned for a modification in the original divorce action? We believe not. In fact it is recognized that a statutory procedural requirement (§ 518.18) of having a *petition of either parent* as a means of invoking the court's power to modify a final divorce decree as to the care, custody, and maintenance of minor children is not mandatory and that a *motion by either party* is sufficient and is equivalent to a petition within the meaning of the statute. Bishop v. Bishop, 238 Ky. 702, 705, 38 S. W. (2d) 657, 658.

It is also significant that:

"An application for the modification of provisions of a divorce decree with regard to the custody of minor children is a supplementary proceeding, incident to the original suit. It is in the nature

---

[6]See, § 645.16(4) ; 50 Am. Jur., Statutes, §§ 463, 464; 17 Dunnell, Dig. (3 ed.) §§ 8986, 8962. For Annotation on act, see 42 A. L. R. (2d) 768, 790.

of an independent proceeding." 2 Nelson, Divorce and Annulment (2 ed.) § 15.43.

As already noted, the additional remedies afforded by the uniform act are supplementary and ancillary to the remedies which otherwise exist. Although the proceedings herein on their face ask only for an enforcement of the duty of support without making any direct request for a modification of the original decree, it is not to be overlooked that the attorney appearing for the petitioner has implied authority to take all remedial steps which are ancillary to and reasonably necessary to obtain the relief for which the proceedings were instituted. Section 518.49 provides that the county attorney (where the petitioner is unable to employ an attorney) shall appear on behalf of and represent the petitioner in all proceedings under the uniform act. Obviously his implied authority is no less plenary than that of an attorney employed by a petitioner at her own expense.

"An attorney of record, by virtue of his employment as such, subject to the approval of the court, has implied authority to do all acts necessary and proper to the regular and orderly conduct of the case and the protection and promotion of his client's interests, which affect the remedy only, and not the cause of action,[7] and which are ancillary or incidental to the general authority conferred." 5 Am. Jur., Attorneys at Law, § 85.

"* * * with respect to procedure and matters affecting the remedy alone, the client is presumed to confer on the attorney authority to do all things which the latter, by virtue of his superior legal knowledge, deems necessary or proper." Annotation, 132 A. S. R. 148, 152.

Under any liberal or practical construction of the uniform act to accomplish its purpose, namely that of enforcing the duty of sup-

---

[7]The attorney cannot compromise, settle, surrender, or impair the cause of action or the subject matter of the litigation without the consent of his client, this being within the exclusive control of the latter. See, Annotation, 132 A. S. R. 148, 153.

port *whether that duty is imposed* by any law, court order, *or decree,* the statutory right of representation vested in the county attorney reasonably carries with it the implied authority (if not the duty) to apply to the court, by appropriate motion, for a modification of the visitation and custodial provisions of the final decree to the extent necessary to enable the court to enforce a duty of future support. As already noted, an application *by motion* of either parent under the uniform act reasonably satisfies the provision of § 518.18 which calls for a petition of either party as a prerequisite for invoking the court's power of modifying the final decree. If, upon the making of a motion, the obligor needs a continuance for the purpose of obtaining and preparing evidence in opposition thereto, the court will of course grant a reasonable extension of time.

If we were to hold that a court is powerless to amend its own final decree of divorce without first having an express application therefor in the main divorce action itself, we would not only be defeating the beneficent provisions of the Uniform Reciprocal Enforcement of Support Act but we would also be ignoring the basic legal concept that such an application is in the nature of an independent supplementary proceeding, which though incidental to the main action is not a continuation thereof.[8] We can find no justification for erecting technical barriers to prevent this independent supplementary proceeding from finding expression through and under the remedial provisions of the uniform act. If we were to do so we would disregard the inherent equitable power of this court to control the custody of children and would subject their welfare to intolerable delay through a needless circuity of actions. In Atwood v. Atwood,[9] 229 Minn. 333, 338, 39 N. W. (2d) 103, 106, we said:

---

[8]See quotation, *supra,* from 2 Nelson, Divorce and Annulment (2 ed.) § 15.43.

[9]The Atwood case is discussed in 34 Minn. L. Rev. 347.

"* * * Although the granting of a divorce is purely statutory, it is fundamental that, when a statute is passed authorizing courts in equity in divorce actions to determine the custody of children, *it merely makes applicable to divorce actions an equitable jurisdiction which the courts already possess and which might be exercised without the aid of a statute.* The enactment of such statutes, though fundamentally not necessary, has served a useful purpose, because it has made for procedural certainty. Dovi v. Dovi, 245 Wis. 50, 13 N. W. (2d) 585, 151 A. L. R. 1368; 2 Schouler, Marriage and Divorce (6 ed.) § 1882. Although there is substantial and respectable judicial opinion that this equitable power ought not to be exercised in a state where jurisdiction to grant a divorce is vested in a court of equity, which already has jurisdiction to protect the interest of a child, we cannot concur with that view. *It seems wholly illogical and impractical to make the exercise of a court's protective jurisdiction over infants dependent upon a needless circuity of actions.* This is particularly true where, as in Minnesota, the distinction between actions at law and suits in equity, and the forms of such actions and suits, are abolished. M. S. A. 540.01. *Why send the parties who are already before the court out through one jurisdictional door when they may immediately, via a subsequent and different action, return for such relief through another door?*"[10] (Italics supplied.)

The motion for a modification of a final decree enables the court, in the exercise of a sound discretion, to determine, *under the then existing conditions,* whether the visitation and custodial rights of the respective parents ought to be changed with a due regard not only for parental rights but for the overriding concern of safeguarding the children's welfare as to both support and parental influence. Whether the final decree is to be modified to provide for a division of custody or for a change in the visitation rights; by resorting to some other form of modification; or by providing for

[10]The Atwood decision was filed on August 5, 1949. At the next session of the legislature, in 1951, the legislature enacted § 518.66 to safeguard the holding of the Atwood case from any inadvertent repeal by implication.

no modification at all must in the final analysis be determined by the trial court in the exercise of its sound discretion. If the court determines that the visitation and custodial rights may properly be changed, then the father's modified rights may be fully protected by a conditional provision that his payments for future support shall commence only when the Illinois court (the initiating state) orders the mother to comply with such modified rights of visitation as well as with any provision pertaining to a change of custodial status. If the decree as modified is violated, the husband and father will be relieved of his obligation to the same extent he was under the original decree.

The present case was determined below on the assumption that the rule of the Eberhart case relieved the father of the duty of support both as to the past and as to the future payments and no consideration was given to the question of whether the court could properly modify the final decree of divorce. Under the circumstances, the county attorney, as the representative of the petitioner, had no occasion to make a motion for an appropriate modification of the original decree. Insofar as the decision of the trial court pertains to the duty of the husband to make payments of support money in the future is concerned, the decision is reversed and the case is remanded to the trial court to proceed under the principles set forth in this opinion. If the Uniform Reciprocal Enforcement of Support Act is to accomplish its purpose, it must be given a liberal construction and a flexible application so that it may be adapted to the peculiar circumstances of each case. Considerable latitude must be given to the trial court's exercise of discretion in solving each enforcement problem as it arises under the uniform act.

The order of the trial court is in part reversed and the case is remanded in accordance with this opinion.