ELIZABETH H. HOLMES v. THERON A. HOLMES.

96 N. W. (2d) 547.

May 8, 1959—No. 37,327.

*Ryan, Ryan & Ebert,* for appellant.

*Fitzpatrick & Larson,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a final divorce judgment which awarded the wife (1) a one-third interest in specified personal property owned by the defendant subject to existing liens, (2) $3,000 representing delinquent alimony and support payments, (3) the custody of four minor children of the parties, and (4) $750 monthly for their support together with payment of medical and hospital expenses. The appeal does not involve issues bearing upon grounds for divorce. The defendant husband seeks amendment of the trial court's findings of fact, conclusions of law, and order for judgment or a new trial on the issues of alimony, custody, and support.

The parties were married in 1941. The plaintiff is now 36 years of age and the defendant is 47 years of age. Four children, ages 13, 12, 10, and 7, are the issue of this marriage. The parties began their married life at Brainerd, Minnesota, where the defendant owned a home. This home was sold in 1949 when the family moved to Florida. It appears that the defendant maintained a high standard of living, as a result of which his wife and children were accustomed to many of the luxuries of life. In addition to a fully modern home at Brainerd, Minnesota, the defendant maintained a Chris Craft motorboat, an airplane, two automobiles—usually of the Buick and Cadillac class—and they traveled frequently enjoying accommodations at the best hotels. After the parties moved to Florida, they maintained a home on Gull Lake near Brainerd during the summer months. While the parties were living in Florida, it appears that the marriage relationship deteriorated and the plaintiff returned to Minnesota with her children and established her residence here sometime in the summer of 1951. Following the divorce of the parties, the defendant remarried and now resides in his own home in Macon, Georgia. The plaintiff moved to Connecticut in December 1954 and remarried there on January 9, 1956.

While the parties were in Florida in 1951, they made an agreement in anticipation of divorce that the defendant would pay $300 a month for support of the children and $100 for alimony. After this action was started in Minnesota, however, the trial court on February 21, 1952,

made an order requiring the defendant to pay as temporary alimony and support money the sum of $500 per month. The husband, however, since 1952 has limited himself to the payment of the $400 a month, which he agreed to pay in 1951. Because of this delinquency the court made an order in June 1954 requiring him to show cause why he should not be cited for contempt. He failed to appear personally both on the return date and on a later date to which the hearing was continued in August 1954. On September 3, 1954, the court entered an order suspending the husband's right to visit his children.

There are three issues presented by this appeal. The defendant contends: (1) The support payments and permanent alimony awarded are excessively high in view of the defendant's financial condition and the findings relating to such award are contrary to the evidence; (2) the trial court abused its discretion in permitting a judgment to be entered for alimony and support in excessive amounts; and (3) the removal of the children from the jurisdiction of Minnesota in December 1954 relieves the defendant from payment of accrued support installments.

■ In considering the first point raised by the defendant, it is necessary to keep in mind the provisions of M. S. A. 518.58, which provide that upon divorce:

"* * * the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

Section 518.59, in addition to providing for an award of household goods and furniture, provides that the court may also:

"* * * order and decree to the wife such part of the real and personal estate of the husband not acquired during coverture, exclusive of future earnings and income, and not exceeding in present value one-half thereof, as it deems just and reasonable, having regard to * * * the amount of alimony and support money awarded, if any, the character

and situation of the parties, the nature and determination of the issues, and all other circumstances of the case."

In reviewing the findings of the trial court in divorce actions, we have said many times that the trial court has the responsibility of finding the facts and resolving conflicts in the evidence and that such findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole. Loth v. Loth, 227 Minn. 387, 392, 35 N. W. (2d) 542, 546, 6 A. L. R. (2d) 176; Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164.

From the statutory provisions above referred to it is clear that the amount of awards within the statutory limits rests within the sound discretion of the trial court. The trial court's determination will be reversed only for an abuse of discretion. Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647. In the Krusemark case we reduced an "excessive" support award because of the strained finances of the husband. In Webber v. Webber, 157 Minn. 422, 427, 196 N. W. 646, 648, we said that this court could not interfere with an award unless there had been an abuse of discretion, "which means a discretion exercised to an end or purpose not justified by and clearly against reason and evidence; a clearly erroneous conclusion and judgment—one that is clearly against the logic and effect of such facts as are presented in support of the application, or against the reasonable and probable deductions to be drawn from the facts disclosed. 1 C. J. 372." In reviewing the reasonableness of an award for permanent alimony, the standards to be applied are those set forth in §§ 518.58 and 518.59, having in mind the ability of the husband, the character and situation of the parties, and all the other circumstances of the case. Loth v. Loth, *supra*; Fruen v. Fruen, 228 Minn. 391, 37 N. W. (2d) 417.

Since the amount of the award for permanent alimony and for support money which is in issue here should be commensurate with the husband's ability to pay—depending upon his assets and income—it has been necessary to examine a great mass of involved and contradictory evidence submitted on that point. In his findings, the trial court awarded the plaintiff an undivided one-third of the defendant's personal property, subject to existing liens, as permanent alimony. This property as listed

in the judgment consists of shares of common stock in various corporations and certain notes receivable. Both the award for permanent alimony and for support money in the sum of $750 a month were made on the basis of conflicting evidence submitted with reference to the husband's financial status.

From his Federal income tax returns it appears that the husband's net income ranged from $37,315.82 in 1945 to a loss of $3,270.50 in 1952. His net income in 1951 was $18,991.98. The defendant submitted a summary of his assets and liabilities as of February 2, 1952, from which it appears that his total assets were $409,154.28, and total liabilities were $394,464.20. While the summary indicates a net worth of about $14,700, he argues on appeal that his net worth is actually $447.86.

As opposed to the defendant's claims as to his net worth, the plaintiff, on the basis of reported earnings of the defendant's various companies and the value of the stock as determined by sales,[1] arrived at the result that the defendant's net worth is $605,326.68. The trial court, however, after listening to the evidence and after an examination of a great mass of documentary evidence, consisting of corporate and individual tax returns as well as corporate financial statements which are now before us, came to the conclusion as expressed in the findings:

"* * * defendant's equities in said properties are difficult to ascertain with exactness but * * * are in excess of $300,000.00, having due regard for the liabilities of defendant."

It is impossible to reconcile the opposing claims of the parties or to say that one is wholly right or wholly wrong. This could be demonstrated by an examination of the evidence relating to the financial condition of various companies which the defendant controls or wholly owns, but we do not undertake to review in this opinion all of the ramifications of defendant's business enterprises.

While the record does not support the plaintiff's claim that the

---

[1]The trial court obviously discounted valuation of stock based on sales with reference to the Coca-Cola bottling companies, since the reported sales were made in 1949 and 1950, presumably on the theory that the soft drink business had suffered through economic trends in recent years.

defendant's net worth is in excess of $600,000, neither does the evidence support the defendant's contention that his net worth is $447.86. The court was not required to accept the defendant's version of his net worth as supported by book values. Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176; Heuchan v. Heuchan, 38 Wash. (2d) 207, 228 P. (2d) 470, 22 A. L. R. (2d) 1410.

Unfortunately there is no testimony in the record by an industrial appraiser, which might have been of help to the court in arriving at a more satisfactory conclusion. The trial court was required to take the evidence which the parties left with him and to try to choose from the mass of exhibits, documents, and testimony submitted by both parties such evidence as he considered trustworthy after making allowances for adjustments which the record compelled.

It might be argued that the court erred in failing to find the net worth of the defendant so as to reach a reliable basis upon which to fix permanent alimony as required by §§ 518.58 and 518.59. In his findings the trial court awarded to the plaintiff "a one-third interest in and to all of the personal property owned by the defendant" as set forth, which included stock in Coca-Cola companies at St. Cloud, Minnesota; Hutchinson, Minnesota; Devils Lake, North Dakota; Brainerd, Minnesota; Tifton, Georgia; Macon Brick and Block Company of Macon, Georgia; and Tifton Brick and Block Company of Tifton, Georgia; as well as notes receivable "subject to all existing liens as of March 2, 1952." In view of this disposition by the court the net worth of the defendant does not become particularly pertinent as it bears upon the subject of permanent alimony. The plaintiff takes her one-third interest in the defendant's property subject to all the liens against it.

In Longbotham v. Longbotham, 119 Minn. 139, 143, 137 N. W. 387, 389, the objection was made that the court was without authority to award the wife as permanent alimony an undivided interest in the real estate of her husband but that its value should have been ascertained in an amount not exceeding the statutory limit to which she was entitled. The court held that the statute, which provided that the order and decree could give the wife such part of real and personal estate not exceeding one-third, permitted the court, where circumstances warranted, the right to decree to the wife an undivided part of the

whole "not exceeding in value one-third of his property, as the court may find to be for the best interests of the wife under the circumstances * * *." It is our view here that, because of the uncertainty of the value of interests of the defendant in the various businesses and properties in which he was involved, the court did not abuse its discretion in allowing to the plaintiff an undivided one-third of his property. In fact, we can think of no other practical way in which the trial court could have disposed of the matter.

We next come to the question of the reasonableness of the court's order and judgment requiring the defendant to pay $750 a month as support money. As we have pointed out, there are four children ranging in age from 13 to 7 years. One of the girls, it appears, is permanently ill with diabetes and requires insulin daily with special diets and constant attention. Having in mind the standard of living to which these children have been accustomed, we inquire as to whether the record satisfactorily establishes a financial worth and income on the part of the defendant to justify the award of $750.

It has been said many times that it is the father's duty to do the best he can to support his children in the manner suitable to his station and circumstances. While it is the primary duty of the father to support the minor children, the amount of such support must be in keeping with his income and ability to provide for them. 17A Am. Jur., Divorce and Separation, § 854; 27 C. J. S., Divorce, § 319h. His liability for their support is not limited by the statutory regulations governing the allowance of alimony to the wife. Jacobs v. Jacobs, 136 Minn. 190, 161 N. W. 525, L. R. A. 1917D, 971; Warner v. Warner, 219 Minn. 59, 70, 17 N. W. (2d) 58, 64. In Fruen v. Fruen, 228 Minn. 391, 37 N. W. (2d) 417, we said that it was pertinent to inquire as to the amount the father earned in other years to determine whether, because of extraordinary circumstances, his income for a particular year was not a reliable guide.

In reviewing the reasonableness of the award for alimony and support money we think that the court fairly considered the defendant's ability to pay against the background of his property and interests and demonstrated record as an astute businessman. In observing that the wife and children were accustomed to "a full, varied, interesting life of compara-

tive luxury," the court said:

"That defendant is a man of drive and energy, acute in business, has enjoyed the confidence of rich relatives and associates, and has wide-flung interests as the result of friendly credits and has evidently over-expanded himself and at the present time is engaged in the intelligent sale of losing ventures and consolidating his business interests by eliminating much in losses."

This latter observation is supported by the record, which indicates that when the beverage business may have passed its peak or began to show losses his position was compensated by his successful development of the building supply business through the Macon and Tifton companies. Moreover, the court could have considered financial statements submitted by the defendant to the First National Bank of Brainerd, Minnesota, the most recent of which was October 10, 1949, showing his total assets to be $979,700 subject to current liabilities of $110,000, leaving a net worth of $869,700.[2] This was subject to contingent liabilities of $200,500 as represented by endorsements on notes for others. That the defendant is an astute and sagacious businessman is fully supported by the record, including his activities in the stock market as shown by the record. The record shows, for instance, that in 1945 he purchased Breezy Point Lodge near Brainerd for the sum of $95,000 and sold it the following season for $200,000.

The trial court could also take into consideration the fact that on

---

[2]The defendant contends that the court erred in admitting this evidence over objection. This objection apparently is based on the theory that information given to the bank in connection with securing a loan is privileged. M. S. A. 595.02 enumerates instances in which testimony or evidence may or shall not be required from witnesses because of privilege. That statute makes no reference to communications given to bankers in connection with business transactions. It is our view that this point requires no further discussion than to observe that where the legislature has specifically enumerated instances where testimony shall be privileged it has by inference expressed an intention to exclude any other privilege as to testimony or production of evidence. 58 Am. Jur., Witnesses, § 363; In re Story, 159 Ohio St. 144, 111 N. E. (2d) 385, 36 A. L. R. (2d) 1312; State ex rel. G. M. Gustafson Co. v. Crookston Trust Co. 222 Minn. 17, 22 N. W. (2d) 911.

March 16, 1953, when he obtained a loan from the Macon Federal Savings and Loan Company at Macon, Georgia, he stated that his income was $24,000 per year. We do not think that under the circumstances here it is necessary to strike an accurate balance as to the precise net worth of the defendant in order to sustain an award for support. The evidence as a whole fully establishes that the defendant is engaged in wide and substantial interests. The record indicates that the gross sales of these various enterprises operated by him in 1951, as indicated by the tax returns, exceeded one and one-quarter million dollars.

Under the circumstances we do not think the court abused its discretion in fixing the amount of support money in the sum of $750 a month. All that we have said with reference to the reasonableness of the court's action in regard to support money applies with equal force to the item of $200 per month alimony allowed to the wife prior to her remarriage. It is our view that the trial court did not abuse its discretion in fixing monthly alimony to the wife in the sum of $200 per month.

■ The defendant contends that during the years 1953 and 1954, prior to the time plaintiff moved to Connecticut, he was refused the right to visit his children by the plaintiff or to have them visit him during the vacation periods of those years, although those rights were given to him by the order of the court. He further contends that he has been denied the right of visitation because his wife has moved with the children to Connecticut. In answer to this argument it is only necessary to say that during all of the time this action has been pending the defendant has been in default in payment of the alimony and support money provided by the court's order. On September 3, 1954, the court amended its order with reference to visitation to provide:

"* * * that such visitation period shall be suspended unless and until the defendant shall have paid all sums of money owing for such alimony and care of plaintiff and said minor children."

During all of the time that this action has been pending, the defendant, contrary to the order of the court, had paid only $400 per month and refused to pay the support and alimony in the amounts provided by

court order. At the conclusion of the testimony, the court observed:

"I feel the defendant has been wilful in not making those payments; if he doesn't want to purge himself of that thought in the Court's mind, we will have to take it into consideration at a latter stage of the proceedings, and I will."

In his memorandum accompanying the order of May 29, 1957, amending the findings of fact so as to terminate alimony payments to the plaintiff by reason of her remarriage, the court said:

"This defendant has never even for one month made the payments provided by order pendente lite. His failure is not only contemptuous but studied and deliberate. An order Ne Exeat has been in wait for him on the court's own motion, but his continued absence from the state makes the court despair of its execution and jurisdiction is belatedly and reluctantly relinquished."

Defendant relies on Eberhart v. Eberhart, 153 Minn. 66, 189 N. W. 592; Fjeld v. Fjeld, 201 Minn. 512, 277 N. W. 203; Anderson v. Anderson, 207 Minn. 338, 291 N. W. 508; Iverson v. Iverson, 243 Minn. 54, 66 N. W. (2d) 549; and Hasse v. Hasse, 232 Minn. 234, 45 N. W. (2d) 383, to the effect that where a father's right of visitation has been defeated by the act of the wife in wrongfully removing the children from the jurisdiction he is relieved from payment of support installments that have already accrued. We agree with the trial court that the facts in the case before us do not warrant the application of this rule. Where the conduct of the parent has been contemptuous of the order of the court as indicated by the record before us, under circumstances where he has failed to comply with the court's order, he should not be excused from payment of support money because he was denied the right of visitation during the time he was in default. It should also be observed that the plaintiff did not move to Connecticut with her children until after the court had amended its order suspending right of visitation until the defendant had fully paid his obligations under the court's order. This is a different situation than that considered in State of Illinois ex rel. Shannon v. Sterling, 248 Minn. 266, 80 N. W. (2d) 13, where the wife removed from Minnesota to Illinois, which removal frustrated the husband's right of visitation. The husband there

remained in Minnesota. Prior to the wife's removal from Minnesota, the husband had not been in default of payments required by order of the court. Because the wife had moved from the jurisdiction where the parties lived, the court held that the husband was relieved from payment of all unpaid installments of support money accrued during the period he had been denied his right of visitation. In the case before us the husband had remarried and lived in Georgia, while the wife and children later moved to Connecticut. Since the trip from Georgia to Connecticut would be no less burdensome than from Georgia to Minnesota, the defendant's right of visitation does not seem to be prejudiced by the wife's removal from Minnesota.

Affirmed.