**Velma VON TROTHA, Plaintiff and Respondent,**

v.

**Lloyd W. HANSEN, Defendant and Appellant.**

No. 8573.

Supreme Court of North Dakota.

Oct. 29, 1969.

Joseph P. Stevens, Minot, for appellant.

Waldron & Kenner, Minot, for respondent.

ERICKSTAD, Judge.

This is an appeal from a judgment of the District Court of Ward County dated June 14, 1968, against the defendant, Lloyd W. Hansen, granting to the plaintiff, Velma von Trotha, the sum of $7,439.76, representing the principal sum of $5,560.00 as unpaid child support to May 31, 1968, plus interest to May 31, 1968, of $1,854.76, and costs of $25.00.

The origin of this case lies in a judgment obtained in the District Court of Stevens County, Minnesota, on September 2, 1955, by which Velma B. Hansen (now Velma von Trotha) and Lloyd W. Hansen were divorced. In the judgment Velma was given the custody of the three minor children. Part 3 of the judgment approved, confirmed, and adopted a settlement agreement entered into by the parties on July 11, 1955.

Part II of that agreement reads:

That the parties hereto agree that custody of the minor children of the parties shall be vested in second party, and both parties hereto recommend to the court that said second party be awarded custody of said minor children, with the provision, however, that said first party shall have such rights of visitation as to the court seems proper, and also the

right to take said children on vacations so long as such does not and would not interfere with their education and welfare.

The second paragraph of the introductory part of the agreement recites that "the parties hereto until recently have resided in the city of Morris, Stevens County, Minnesota." The transcript of the trial court proceedings in North Dakota discloses that both Mr. and Mrs. Hansen were residing in Sioux Falls, South Dakota, at the time of the divorce judgment.

Although the record is not clear as to the date and the circumstances, it appears that Velma subsequently made a motion in the District Court of Stevens County, Minnesota, asking that Lloyd be held in contempt of court for failure to abide by the terms of the judgment, his failure being, apparently, to make the child support payments. The record before us discloses only that on July 29, 1957, this motion was denied; it does not state the reasons for the denial nor any of the facts surrounding the motion. However, Lloyd contends that it was denied because Velma had taken the children out of the state of Minnesota without his or the court's permission and that therefore, under the law then prevailing in Minnesota, Velma could not collect the child support payments.

By instrument dated July 29, 1957, the same date as the order referred to, the Stevens County, Minnesota, District Court modified the divorce judgment to award custody of the daughter to Lloyd and to increase the support payments for the two sons from $40 to $45 per month, commencing October 1, 1956, the payments to be made on the first day of each month. It also provided "That each party to this action have the usual and reasonable rights of visitation with the minor child or children in the custody and under the control of the other party to this action."

It is to be noted that at that time the two sons were living with Velma at Parsons, Kansas. This fact is evident from the transcript of the trial court proceedings taken in Ward County District Court and must have been known to the Minnesota court at the time of the modification of the judgment.

By complaint dated December 12, 1967, Velma commenced an action in Ward County District Court of this state to recover from Lloyd $5,335, which, she alleged, he was in arrears in the child support payments. She also sought 4 per cent interest on the said amount. By answer dated December 21, 1967, Lloyd denied that he was indebted to Velma in that amount or in any other amount.

When this matter was tried, the Ward County District Court found Lloyd to be $5,560 in arrears in child support payments through May 1968, and it ordered judgment for that sum plus interest at the rate of 4 per cent per annum. The court apparently determined the amount of unpaid child support from a tabulation submitted by Velma as an exhibit, which Lloyd conceded to be substantially correct.

This case was argued and decided in the district court on the basis that Minnesota substantive law applies. We shall view the case in that light.

It is undisputed that Velma moved first to Sioux Falls, South Dakota, in 1955. About the end of November 1956, after about a year and a half in Sioux Falls, she moved to Parsons, Kansas, and, about April 1959, to Aurora, Colorado, a suburb of Denver. She has lived in Aurora or in Denver since then. Her moves from state to state were in connection with her employment by Avon Products, Inc.

Lloyd contends that Velma refused him visitation rights when he went to South Dakota, that it is for this reason that he first stopped making the child support payments, and that this led to the contempt proceedings which were later dismissed. Velma denies this. She apparently concedes that on several occasions she required him to make certain child support

payments of which he was in arrears before she would permit the children to leave her home in Colorado to visit him outside the state.

The trial court in its memorandum opinion stated that the evidence is not conclusive that the defendant was denied the right of visitation but held that if the plaintiff did deny the defendant the right of visitation, she was justified in so doing. As the appellant's brief refers us only to Minnesota Supreme Court decisions which relate to the effect of removing children from a jurisdiction in which a custody decree was obtained, we are led to believe that the appellant does not seriously press his contention that he was deprived of visiting with his children when he went to see them out of state, but that he is in effect urging upon this court that the mere removal of the children from the state of the judgment excuses him from making the child support payments. In any case, from a study of the record we are of the view that visitation rights were denied the defendant only if the Minnesota law is such that removal of the children from the state of Minnesota constitutes a denial of visitation rights.

The four cases referred to us by the appellant as supporting his position are: Eberhart v. Eberhart, 149 Minn. 192, 183 N.W. 140 (1921); Eberhart v. Eberhart, 153 Minn. 66, 189 N.W. 592 (1922); State of Illinois ex rel. Shannon v. Sterling, 248 Minn. 266, 80 N.W.2d 13 (1956); and Curry v. Felix, 276 Minn. 125, 149 N.W.2d 92 (1967).

In the first Eberhart case the trial court denied the wife's action for divorce and decreed that during the continuance of the estrangement the wife should have the custody of the minor child from November 1 to May 1 of each year and that the father should have the custody of the child from May 1 to November 1. The wife protested the divided custody provisions. On appeal the Supreme Court said that in determining this question, the best interest of the child is the primary consideration. In modifying the trial court's judgment and awarding custody of the five-year-old child to the mother and affording the father visitation privileges, the court said:

We are of the opinion that the interest of the child will not be best served by the divided custody ordered by the trial court and that custody should be awarded to one or the other parent. If he cannot have the daily care and guidance of both father and mother, we are of the opinion that to a boy five years old the mother's care is most indispensable. Yet the father should be afforded most liberal opportunity of seeing and visiting his child and of taking him out at all reasonable times. The judgment of the trial court will be modified so as to award the custody of the child to plaintiff under such regulations for visiting and association on the part of the father, and with such allowance for support, as the trial court may order.

Eberhart v. Eberhart, 149 Minn. 192, 183 N.W. 140, 141 (1921).

The second Eberhart case, decided a little over a year after the first one and consisting of less than one page in the *Northwestern Reporter*, with no statement of facts and no supporting reasoning given, seems to hold that because the plaintiff mother took the minor child from the jurisdiction of the court, the defendant father was relieved from making child support payments that had accrued in the past and were to accrue in the future; and that only upon returning the child to the state could the mother again collect child support payments and then only from the time the child was returned to the state.

It is interesting to note, however, that the court concluded by finding that should the father choose to relieve himself of his default (presumably by making payment of all accrued support money), the child was to be returned to the state, where the father was to have the opportunity of

visitation as provided for in the former decree.

As the circumstances surrounding the removal of the child from the state are unknown in the second Eberhart case, it is difficult to know the breadth of the rule and to apply it to other cases. There is no indication in that case that the removal of the child from the state was in any way necessary to the mother's employment or the child's care; in the instant case, however, it appears that the mother's employment necessitated her movement from one state to another and that she supported her children through her employment.

The third case referred to us by the appellant, State of Illinois ex rel. Shannon v. Sterling, was a two-state proceeding brought under the Uniform Reciprocal Enforcement of Support Act to compel a divorced Minnesota father to pay for the support of his three minor children, who were removed by the mother to Illinois without his consent or the approval of the court. The initiating petitioner, the State of Illinois, for and on behalf of the children, appealed from an order dismissing the proceeding. Although the Minnesota Supreme Court acknowledged the Eberhart rule, it pointed out that that rule as to future installments of support money was distinguished and modified by it in Iverson v. Iverson, 243 Minn. 54, 66 N.W.2d 549 (1954).

We think the most important aspect of Sterling is that, although the petitioner did not ask that the original divorce decree be modified, the Supreme Court, insofar as the decision of the trial court pertained to the duty of the father to make payments of support money in the future, reversed the decision and remanded the case to the trial court to permit a modification of the judgment to permit the mother to keep the children outside the state of Minnesota and to still require the father to make child support payments.

The fourth case referred to us by the appellant is that of Curry v. Felix, also a proceeding under the Uniform Reciprocal Enforcement of Support Act. Although the court referred to the second Eberhart case and other cases, as well as to Sterling, the main part of the opinion revolves around whether the presumption of legitimacy arising from birth during wedlock of a child conceived before the marriage is rebuttable.

We think it is especially important to note that it is with this latter issue of paternity that the court was mostly concerned in Curry, not with the effect of removing children from the jurisdiction of the court which rendered the judgment, inasmuch as the court failed to make any reference to Michalson v. Michalson, 263 Minn. 356, 116 N.W.2d 545 (1962), a decision which it had rendered only five years previously.

Michalson was an appeal from an order of the district court requiring the defendant father to pay support money for his minor children. The mother had been granted custody of the two children by a decree of divorce. She later remarried and, with the children, moved from the state. The defendant contended that he had been denied the right of visitation with his children and that he was thereby excused from the payment of support money under the authority of Eberhart v. Eberhart, 153 Minn. 66, 189 N.W. 592 (1922). The trial court was of the view that the removal of the children from the state did not excuse the father's failure to provide for their support.

The facts were that by the divorce decree, entered on February 28, 1959, the mother was awarded custody of the children "subject to the right of reasonable visitation" by the father. Subsequently the mother married an army sergeant, who was transferred to Japan, and she and the children moved there with him, about September 1, 1960. She did not secure a court order permitting her to take the children from the state nor did her former husband consent, although the record indicated that

he was aware of the possibility that she would leave the state with the children and did not object. The divorce decree contained no specific prohibition against taking the children out of the state. In deciding that the mother was entitled to the support payments for the children notwithstanding that she had removed them from the state without permission from the court or from her former husband, the Minnesota Supreme Court said:

We have recognized that, where a husband's visitation rights are denied by the wife's wrongfully taking the child out of the state, the husband's duty to make support payments pursuant to the divorce decree will be temporarily suspended. State of Illinois ex rel. Shannon v. Sterling, 248 Minn. 266, 80 N.W. 2d 13; Hasse v. Hasse, 232 Minn. 234, 45 N.W.2d 383; Eberhart v. Eberhart, supra [153 Minn. 66, 189 N.W. 592]. These authorities have valid application under circumstances where the wife by wrongful or malicious conduct deprives the husband of his right of visitation, or where the husband is not informed of the removal or the whereabouts of the child. The rule in the Eberhart case to the effect that a husband is relieved of his obligation to pay support money by the wife's removal of the child to another state is not a hard-and-fast rule which must have strict application in each case. The husband's obligation to pay support money must depend upon the particular facts in each case and must be viewed in light of not only the welfare of the child but the father's primary obligation to provide for his support. Fjeld v. Fjeld, 201 Minn. 512, 277 N.W. 203; Holmes v. Holmes, 255 Minn. 270, 96 N.W.2d 547. (footnote omitted)

In the more recent case of Gannon v. Gannon, 258 Minn. 57, 102 N.W.2d 677, we pointed out that it cannot be said as a general proposition that the obligation to provide for maintenance and support of the children must solely depend upon

the right of visitation. We there said (258 Minn. 61, 102 N.W.2d 680):

"* * * The father's responsibility for the support of his child is not conditioned upon that right, even though it is recognized that [it] is very important both to him and to the child."

We there pointed out that the decision in State of Illinois ex rel. Shannon v. Sterling, supra, "in no way lessens the force of the well-established principle of law that it is the primary duty of the father to support the minor children in a manner suitable to his station and circumstances."

Michalson v. Michalson, 263 Minn. 356, 116 N.W.2d 545, 546–547 (1962).

The Minnesota Supreme Court concluded as follows:

We do not understand that our decisions permit a husband to escape responsibility for supporting his children by waiving rights of visitation. The court may well have determined that when the wife's husband was transferred to Japan she had little choice other than to accompany him and take the minor children with her. We are accordingly of the view that on the record as a whole the court could find that the wife's conduct was not wrongful so as to justify an abatement of delinquent support payments or to excuse future payments. * * *

Michalson v. Michalson, *supra*, 548.

It is our view that the facts in Michalson much more closely resemble the facts in the instant case than do those of the decisions cited to us by the appellant; and for that reason, applying the rule of law applied in *Michalson*, that removal of children from the jurisdiction of a court which renders a divorce judgment providing for child support payments and for reasonable visitation does not excuse a party from making child support payments unless the removal of the children was

wrongful, we conclude that the appellant is obligated in the instant case for all of the support payments of which he is in arrears.

The children were residing outside the state of Minnesota with their mother at the time the divorce judgment was granted; they were moved from state to state by their mother as her employment necessitated; the mother's employment was essential to their care and support. The Minnesota trial court must have been cognizant of these facts and needs at the time of the original judgment and at the time of its modification. This would explain the absence of a provision in the judgment restricting the children to the state of Minnesota. Under these circumstances the removal of the children from Minnesota was not wrongful and thus did not excuse the father from making the child support payments.

Accordingly, the judgment of the trial court is affirmed.

TEIGEN, C. J., and PAULSON, KNUDSON, and STRUTZ, JJ., concur.