**Josephine Constance ST. GEORGE, petitioner, Respondent,**

v.

**John Duane ST. GEORGE, Appellant.**

**No. 51336.**

Supreme Court of Minnesota.

April 24, 1981.

Harold Sadoff, Minneapolis, for appellant.

Thomas L. Johnson, County Atty., and Thomas L. Aarestad, Asst. County Atty., Minneapolis, for respondent.

Grathwol, Oberhauser & Randall and Joanne Thatcher Swanson, Minnesota State Bar Association Family Law Section, Wayzata, for amicus.

YETKA, Justice.

In proceedings in Hennepin County District Court to enforce the child support and spousal maintenance obligations of appellant-husband, appellant moved for an order directing the Hennepin County Attorney's Office to discontinue its representation of respondent-wife as to matters concerning spousal maintenance obligations and visitation rights. The court heard appellant's motion and by an order dated April 4, 1980, determined that the county attorney could represent respondent with respect to spousal maintenance issues, but not as to visitation issues. The appeal is from that determination. We reverse in part and affirm in part.

The parties do not seriously dispute the factual findings of the trial court. Those findings can be summarized as follows:

Appellant and respondent were granted a dissolution of their marriage on March 30, 1978. At that time, child support for the parties' five children was set at $125 per month for each child and alimony in the amount of $125 per month was awarded to respondent. Respondent was also awarded custody of the minor children, subject to appellant's right to reasonable visitation upon 24 hours' advance notice.

On June 19, 1978, respondent sought a court order to enforce the March 30, 1978 judgment and decree. Respondent was represented by private counsel and appellant appeared *pro se*. The court ordered the implementation of a wage authorization for future child support payments pursuant to Minn.Stat. § 256.872 (1980).

Approximately 1 year later, respondent applied to the Hennepin County Attorney's Office for assistance in enforcing appellant's obligations for child support and alimony established by the original decree of dissolution and the June 19, 1978 order of the court. The county attorney assigned an assistant county attorney to represent respondent in the enforcement proceedings. Appellant, through private counsel, moved the court for a reduction in child support payments, termination of alimony payments and amendment of the original decree to permit appellant liberal visitation rights.

At a hearing before a referee on October 30, 1979, respondent was represented by the assistant county attorney and appellant was represented by private counsel. At the hearing, respondent alleged that a conflict of interest existed with respect to appellant's private counsel. The referee continued the matter and bifurcated the conflict of interest question and the substantive portion of the hearing. The referee also determined the amount of child support arrearages, increased the amount of the wage assignment and referred the visitation matter to Hennepin County Court Services for mediation.

On January 23, 1980, appellant withdrew his motion for reduction of child support and moved that the county attorney be excluded from continued representation of respondent on the ground that the county attorney had no authority to proceed in matters relating to spousal maintenance or visitation. By an order dated April 4, 1980, the district court determined that the county attorney could represent respondent with respect to spousal maintenance, but not as to visitation issues. This appeal is from the court's order.

The issues raised are:

I. Does the county attorney have authority to represent a non-welfare client in proceedings to enforce spousal maintenance obligations?

II. Does the county attorney have authority to represent a client in proceedings concerning visitation rights?

III. Does appellant have standing to object to the county attorney's representation of respondent on issues collateral to enforcement of child support obligations?

I. In 1974 Congress changed several provisions of Title IV D of the Social Security Act. Social Services Amendments of 1974, Pub.L.No. 93–647, § 101, 88 Stat. 2337, 2351. The amendments were intended to increase the states' participation in the enforcement of child support obligations and in establishing paternity to determine responsibility for

child support. As an incentive to effective state enforcement of support obligations, federal matching funds were made dependent upon the establishment and maintenance of an effective paternity and support enforcement program. The federal legislation specifically required that states provide paternity and support enforcement services to persons not on public assistance. 42 U.S.C. § 654(6) (1976); 45 C.F.R. § 302.33 (1979). By requiring the states to have an effective program, it was thought that the burden of public assistance to families with dependent children would be substantially reduced. S.Rep.No. 93–1356, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad. News 8133, 8146.

The federal legislation required the states to establish a distinct agency in all of the states' political subdivisions that would administer the enforcement program. 42 U.S.C. § 654(3) (1976). That agency in this case is the Hennepin County Support and Collections Office. The federal statute also required that a state enforcement plan provide for cooperative arrangements between these agencies and "appropriate courts and law enforcement officials." *Id.* § 654(7).

There are a number of state statutes in Minnesota that have been enacted or amended to implement the support enforcement mandate of the federal law. In addition, there are a number of statutes, cited by both parties, that empower the county attorney to act on behalf of custodial parents in enforcement of support obligations.

Appellant contends that there is no applicable statute that permits the county attorney to represent a spouse on issues relating to enforcement of alimony or maintenance obligations when that spouse is not receiving public assistance. He argues that the focus of the federal legislation was enforcement of child support obligations only and that the state statutes that effectuate the federal amendments do not expressly or impliedly permit a non-welfare spouse to be represented by the county attorney on matters relating to anything but child support.

Respondent contends that the underlying federal legislation and the state statutes implementing that legislation are broadly remedial in nature and that a reasonable construction of the applicable provisions requires a finding that the county attorney does have authority to represent respondent on enforcement of alimony or maintenance matters.

Minn.Stat. § 518.54 (1980) is the definitional section of the marriage dissolution statute and it distinguishes between "maintenance" and "support." The statute provides in relevant part:

> Subd. 3. **Maintenance.** "Maintenance" means an award made in a dissolution or legal separation proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other.

> Subd. 4. **Support money.** "Support money" means an award in a dissolution, legal separation, or annulment proceeding for the care, support and education of any child of the marriage or of the parties to the annulment proceeding.

■ Despite the differing statutory definitions, respondent argues that the use of the word "support" in the definition of maintenance indicates that the term "support" as it is used in other statutes can refer to maintenance also. This construction suggests, however, that the state legislature is less than precise when using its own terminology. When a statute contains a word that has acquired a special meaning, that word must be construed as consistent with that special meaning. *Id.* § 645.08(1). By virtue of its specific statutory definition, support money, or support, must therefore be construed as referring to obligations for child support.

Minn.Stat. § 393.07(9) (1980) empowers the county welfare board, through the county attorney, to proceed on behalf of the custodial spouse to enforce child support obligations. The statute provides as follows:

> When directed by a judge of district or county court or when a person under court order is in default *in making child support payments* to another person who

has custody of the children for whom such payments have been ordered, the county welfare board shall take such steps as may be necessary to compel the person in default on such payments to make them; to take such steps as may be necessary to compel such persons to make reimbursement to comply with the order of court when in default; and to institute, if necessary, contempt proceedings *on behalf of such person or persons to whom money or property is ordered to be paid or delivered.* It shall be the duty of the county attorney to conduct such contempt proceedings when directed by a judge of the district or county court or when requested by the county welfare board. The county attorney in such contempt proceedings or upon a separate motion supported by order to show cause and affidavits may move the court that any defaults or *delinquent payments under such order of support* be reduced to a judgment against the defaulting party, and where the county welfare board or any other public agency has advanced and expended funds to supply the *unmet needs of such children* because of such default by failure to pay the court order, such county welfare board or other public agency shall be subrogated and may recover under such judgment to the extent that public funds were expended *for the care and support of such children.* The additional cost incurred by the county attorney to bring contempt actions under this subdivision shall be paid from the moneys collected in such actions in whatever manner and amount approved by a judge of that particular county or district court.

(Emphasis added.)

The emphasized portions of the statute clearly indicate that it applies only to enforcement of child support obligations. Both appellant and the Minnesota State Bar Association, as amicus curiae, correctly point out that the arrearages for child support were adjudicated at the October 30, 1979 hearing before the referee and that because appellant has withdrawn his motion to reduce child support payments, the above statute is no longer applicable in this case.

The Uniform Reciprocal Enforcement of Support Act (URESA) is codified in Minn. Stat. §§ 518.41–.53 (1980). The Act is applicable to interstate as well as intrastate cases. In an intrastate case such as the one presently before this court, URESA empowers the county attorney to represent an obligee who is not a resident of the county against an obligor who is a resident of the county. *Id.* §§ 518.45–.49. In order to proceed under URESA, it must be demonstrated that the obligor spouse owes a "duty of support." *Id.* § 518.45(2). A duty of support is defined in Minn.Stat. § 518.42(7) (1980) as including an obligation for "separate maintenance."

Taken together, the cited sections clearly indicate that a county attorney is empowered to represent a spouse in a URESA proceeding for enforcement of maintenance or alimony obligations. In the case before the court, however, the proceedings below were not initiated under URESA. Because respondent chose to proceed under different statutes, the remedies available under URESA are not applicable here.

Minn.Stat. § 518.61 (1980) provides that upon the court's own motion or the motion of either party, the court may appoint a trustee to receive money ordered to be paid as support *or maintenance* on behalf of the spouse entitled to receive such payments. Respondent cites subdivision (e) of the statute that provides as follows:

> The public authority responsible for support enforcement may represent a person entitled to receive support or maintenance or both in court proceedings initiated under this section to enforce compliance with a support order or combined maintenance and support orders.

The clear language of the subdivision makes it applicable only to proceedings "initiated under" Minn.Stat. § 518.61 (1980). It is undisputed that no motion was made and that no trustee has ever been appointed in this case. Respondent argues, however, that the Hennepin County Support and Collections Office is a de facto trustee and that

subdivision (e) should therefore be construed to permit the county attorney to represent respondent on issues relating to enforcement of spousal maintenance obligations. The argument is wholly without merit, however, because payments were never made to or through the support and collections office.

The motions still pending before the court below are essentially directed toward modification of existing orders and decrees. Minn.Stat. § 518.64 (1980) specifically deals with representation by a public authority in proceedings to modify prior orders or decrees. It provides in part as follows:

Subdivision 1. After an order for maintenance or support money, temporary or permanent, or for the appointment of trustees to receive property awarded as maintenance or support money, the court may from time to time, on petition of either of the parties *or on petition of the public authority responsible for support enforcement where the party entitled to support or maintenance receives or has applied for public assistance,* modify the order respecting the amount of maintenance or support money, and the payment of it, and also respecting the appropriation and payment of the principal and income of property held in trust, and may make an order respecting these matters which it might have made in the original proceeding, except as herein otherwise provided.

(Emphasis added.)

While the statute permits representation by the public authority on issues of maintenance, the emphasized portion of the statute clearly conditions representation by a public authority on a party's receipt or application for public assistance funds. Respondent in this case has never applied for or received public assistance benefits. This statute cannot be construed to empower the county attorney to represent private persons as to enforcement of maintenance obligations.

Minn.Stat. § 518.611 (1980) provides as follows:

If the person obligated to pay *support or maintenance* fails to make a required payment, and is given a reasonable opportunity by the court to allege hardship or that the payment has been made, the other party *or the public authority responsible for support enforcement may,* after 30 days, move the court to order, and the court, unless hardship is shown, shall order the employer or trustee to withhold from the obligor's periodic earnings or trust income an amount equal to the court's order for support or maintenance. The assignment is binding on the employer, trustee, or other payor of the funds upon service upon him of notice that it has been made. The payor shall withhold from the earnings or trust income payable to the person obligated to pay support or maintenance the amount specified in the assignment and shall monthly or more frequently remit the amounts withheld to the other party *or, in the case of a public assistance recipient, to the public agency responsible for support enforcement.* Amounts received by the public authority responsible for support enforcement which are in excess of public assistance expended for the party or for a child shall be remitted to the party. An employer shall not discharge or otherwise discipline an employee as a result of a wage or salary assignment authorized by this section.

(Emphasis added.)

Appellant contends that this provision, like Minn.Stat. § 518.64 (1980), should not be construed to permit the county attorney to represent non-welfare clients in wage assignment proceedings. The plain language of the statute suggests that the county attorney may represent a party who is not receiving public welfare in proceedings to have support *or maintenance* enforced through a wage assignment. The last emphasized sentence only directs that payment be made to the public agency in the case of a public assistance recipient and should not be read as limiting public representation to welfare recipients. The services of the county attorney that could be rendered under this statute would be limit-

ed to those necessary to procure a wage assignment.

A construction of the statute permitting the county attorney to act on behalf of a non-welfare client is consistent with the federal mandate. As was noted in the discussion above, the applicable federal statutes and regulations require that enforcement services be made available to both public welfare recipients and private persons. 42 U.S.C. § 654(6) (1976); 45 C.F.R. § 302.33 (1979). The federal regulations only refer to equal treatment of parties seeking to enforce child support obligations. Nevertheless, the state legislature could properly determine that maintenance obligations should also be subject to enforcement by the public authority responsible for such enforcement.

■ Under the plain language of the statute, a construction permitting the county attorney to proceed only on behalf of welfare recipients would prevent public representation in a wage assignment proceeding to enforce child support obligations on behalf of non-welfare recipients. This result is clearly contrary to the requirements of the federal statute and regulations and cannot be adopted by this court. Rather, we think the appropriate construction of the statute is that it permits public representation of parties seeking to enforce support or maintenance obligations through wage assignments regardless of whether or not such parties are receiving public assistance.

Finally, the applicability of this statute is not questioned here. Respondent, in her Notice of Motion and Motion dated July 2, 1979, specifically requested relief pursuant to this section.

Thus, the state statutes cited by respondent in support of the position that the county attorney could represent her as to maintenance issues even though she was not receiving public assistance are, for the most part, inapplicable to the case before the court. The one exception is Minn.Stat. § 518.611 (1980). This provision is applicable in this case and permits the county attorney to represent non-welfare clients in

enforcing both support and maintenance obligations through wage assignments.

II. The parties do not contest that there is no express statutory authority that authorizes the county attorney to become involved in visitation matters. Respondent claims, however, that the issues of child support and visitation are so closely connected that the county attorney has implied authorization to represent respondent on visitation matters. We agree.

Respondent cites *Illinois ex rel. Shannon v. Sterling*, 248 Minn. 266, 80 N.W.2d 13 (1956), when this court determined that a county attorney could, on behalf of a party entitled to support payments, apply to the court for a modification of the obligor's visitation rights to the extent necessary to enforce a future duty of support. At issue in the case was the wrongful removal of the minor children by the custodial parent in violation of the non-custodial parent's visitation rights. The court first extinguished the duty of support from the time of the wrongful removal and then permitted the county attorney to move for modification of the visitation provisions on behalf of the custodial parent to enable the court to enforce a duty of future support. The court reasoned that the county attorney proceeding under URESA has implied authority "no less plenary than that of an attorney employed by a petitioner at her own expense." *Id.* at 276, 80 N.W.2d at 20.

■ The *Shannon* case is distinguishable from this case as it involved a proceeding under URESA and expressly limited the county attorney's representation on visitation matters to the extent necessary to enforce support obligations. Nevertheless, we feel that considerations of judicial economy and the need for the expeditious resolution of parental rights and obligations require that we expand the rationale of the *Shannon* decision and conclude that the county attorney may represent custodial parents as to visitation matters that arise in conjunction with the enforcement of support obligations.

It has been suggested that bifurcated proceedings as to support and visitation matters could be used to resolve the question presented here. The retention of public counsel for the support hearings and private counsel for the visitation hearings would, however, entail unnecessary procedural complexity, delay, and expense. In addition, we recognize that, unlike maintenance obligations, support obligations and visitation rights share a common focus, that being the child or children involved. Because of that shared focus, issues of visitation rights are frequently raised in support enforcement proceedings. The court's concern in enforcement of either visitation rights or support obligations is the physical and mental well-being of the children. In order to assess what action will assure that well-being, the court must be in a position to assess the merits of each party's position as to support and visitation.[1] A bifurcated process would not be as effective in permitting the court to balance the physical needs of the child associated with support and the psychological needs of the child associated with visitation. Accordingly, we believe it more prudent to permit the county attorney's office to continue its representation of a custodial parent as to visitation matters when visitation becomes an issue in support enforcement proceedings.

III. We deem it unnecessary to discuss at great length the remaining issue raised on appeal, namely, the question of appellant's standing to contest the right of the county attorney to represent respondent in this case. We believe he clearly has standing. *See Snyder's Drug Stores, Inc. v. Minnesota State Board of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974).

In summary, the trial court is affirmed in recognizing the county attorney's right to represent respondent on spousal maintenance issues when such public representation was first invoked in a valid proceeding to enforce support obligations through a wage assignment. The trial court's finding that the county attorney could not represent respondent on visitation matters raised by appellant's motion in the enforcement proceeding is reversed.

---

1. We are not unmindful of Minn.Stat. § 518.612 (1980), providing that restriction of visitation rights or the failure to pay support cannot be used defensively in a proceeding to enforce support obligations or visitation rights. That statute does not, however, prohibit either issue from being raised or considered by the court in an enforcement proceeding.