STATE of Colorado, on Behalf of Jean
E. McDONNELL, petitioners,
Appellants,

v.

James T. McCUTCHEON, Respondent.

No. C6–82–1058.

Supreme Court of Minnesota.

Aug. 12, 1983.

Robert W. Kelly, County Atty., Louis A. Dobbe, Asst. County Atty., Stillwater, for appellant.

Robert W. Herr, White Bear Lake, for respondent.

PETERSON, Justice.

Jean E. McDonnell, petitioner below (hereafter plaintiff), a resident of Colorado, commenced a Uniform Reciprocal Enforcement of Support Act (URESA) proceeding in the courts of that state, seeking to recover accrued and ongoing child support. The file was transmitted to the District Court of Washington County, where respondent James T. McCutcheon (hereafter defendant) resides.

The facts relevant to this appeal are essentially undisputed and may be briefly stated. The parties were divorced in New York by order dated April 16, 1970. Pursuant to a separation agreement, custody of their then 6½-year-old child was awarded to plaintiff, subject to defendant's right of visitation at specified times. The decree obligated defendant to pay child support of $25 per week ($40 per week during such time as plaintiff attended school to obtain her teaching degree) until the child reached age 21,[1] and an additional amount equal to 10% of any increases in defendant's gross earnings. The current amount of child support according to the terms of the New York decree would be $426 per month. Defendant has made fairly regular child support payments of $100 per month, except for August 1980 to May 1981, when the child lived with defendant and attended school in Minnesota. The parties agree that the total arrearages through December 1981 would be $24,717, if the New York decree were fully enforced.

In the district court, plaintiff sought an order awarding her the full amount of arrearages accrued, as well as $426 per month ongoing support as specified in the New York order. Defendant argued that his duty of support was negated by plaintiff's wrongful removal of the child in 1974 from New York to Colorado.[2]

---

1. In *Brugger v. Brugger*, 303 Minn. 488, 229 N.W.2d 131 (1975), we held that the lowering of the age of majority in Minnesota to 18 years had no retroactive effect on provisions, for the support of children, contained in divorce decrees entered prior to enactment of the amendment. Hence, the duty to support would also exist under Minnesota law.

2. The parties disputed the circumstances surrounding plaintiff's decision to move her residence, and that of the child, to Colorado. Plaintiff, by affidavit, stated that she suffered from severe respiratory problems and that after a 3-week visit to Denver in August 1973, learned that the Denver air was beneficial to her health. She says she discussed her proposed move to Denver with defendant, and he made no objection. Moreover, defendant moved to another part of New York State and was not regularly visiting the child. Defendant was kept informed of the Denver address and telephone number of plaintiff, but visited his son only once between 1974 and 1982.

Defendant contended, however, that during the divorce proceedings both parties contemplated remaining in New York, so that extensive visitation could be exercised. During the 2½ years after the divorce, defendant says he did have extensive contact with the child. Defendant claims his ex-wife never mentioned any respiratory problems and, in fact, moved to Denver because of a relationship she established in August 1973 with a man from Denver. When plaintiff informed defendant of her intention to move to Denver, defendant did not consent. Moreover, when defendant moved to another part of New York, he was still near enough to visit the child regularly. Defendant maintains he would never have left New York State had his ex-wife and child not moved to Colorado. As to visitation thereafter, defend-

The trial court issued an order, without memorandum, which found that plaintiff removed the child from New York to Colorado "without compelling personal reasons and without obtaining the consent of the defendant or a Court order permitting her to remove the child from the state," and that "the best interests of the child will not be adversely affected by forgiveness and cancellation of arrearages." The order required defendant to pay plaintiff $160 per month for child support, payable until age 21. The order then stated, "All arrearages accumulated pursuant to the decree of divorce herein should be forgiven and canceled based upon plaintiff's wrongful interference with the visitation rights of the defendant in removing the child from New York without defendant's consent or without compelling reason." This appeal followed.

■ A threshold issue is which of two versions of URESA applies. On March 19, 1982, the 1968 version of the Uniform Reciprocal Enforcement of Support Act—also called the revised URESA—became effective in Minnesota, codified as Minn.Stat. §§ 518C.01–.36 (1982). Prior to that time, the 1958 version of URESA, with some intervening amendments, applied pursuant to Minn.Stat. §§ 518.41–.53 (1980). Defendant argues the former version should govern this case, because the URESA petition was filed in Colorado several days prior to March 19, 1982. The petition, however, was not received in Minnesota until April 9, 1982, when it was filed by the court clerk. Because URESA proceedings did not commence here until after the effective date of the new statute, our decision is based on the current statute, not the 1958 version.

■ In an effort to delimit our holding, we pause to note what this case does *not* involve. First, it does not involve an attempt to enforce a foreign money judgment, obtained in the divorcing state, for arrearages. Such a judgment would generally be enforceable here, subject to the obligee's right to assert jurisdictional defenses. *Cf. Matson v. Matson,* 310 N.W.2d 502, 505 (Minn.1981) (*Matson I*); *Matson v. Matson,* 333 N.W.2d 862, 868 (Minn.1983) (*Matson II*). Second, in the instant proceeding the New York decree was not registered, as permitted by Minn.Stat. §§ 518C.22–.25 (1982).[3] Thus, we need not decide what the effect of registration of the New York order would be. We deal here with what might be called the "ordinary" or standard reciprocal action for support.

■ 1. Our study of the purposes and provisions of URESA persuades us that in a standard URESA action, in which ongoing support is sought, the duty of support is to be determined by the law of the responding state without regard to orders or judgments of foreign courts. Minn.Stat. § 518C.28 (1982) provides that "[d]uties of support applicable under sections 518C.01 to 518C.36 are those imposed under the laws of the state where the obligor was present for the period during which support is sought." The foreign order may, however, be used as evidence that the obligor does in fact owe a duty of support. Minn.Stat. § 518C.16 (1982) provides that "[i]f the action is based on a support order issued by another court, a certified copy of the order shall be received as evidence of the duty of support * * *." We read this language to mean that a foreign order is evidence that the obligor's relationship to the obligee gives rise to a duty to support; the language does not compel a responding state to award the same *level* of support. Any support payments made by an obligor pursuant to a foreign URESA order must be "credited against amounts accruing or accrued for the same period under a support order" made by a court of this state, Minn.Stat. § 518C.20 (1982). Because all fifty states

ant claimed finances precluded him from going to Colorado.

**3.** The express wording of Minn.Stat. § 518C.24, subd. 1 (1982), indicates that only "obligees" may seek to register foreign orders. *See Ray v. Ray,* 247 Ga. 467, 469, 277 S.E.2d 495, 496–97 (1981); *Banton v. Mathers,* 159 Ind.App. 634, 641 n. 5, 309 N.E.2d 167, 171 n. 5 (1974). Plaintiff did not file the certified copies of the New York order required by the statute to register a foreign support order.

have similar reciprocal legislation, 9A U.L.A. (1979), 1983 Supp. 187, 224, when a Minnesota court orders payments to be made under URESA, those payments constitute a credit against amounts accruing under foreign orders.

▮ URESA is designed to help obligees obtain support expeditiously and economically. When foreign decrees are sought to be enforced, modified, or nullified, courts are confronted with difficult questions of foreign law. By refusing to consider foreign orders in standard URESA actions, these disadvantages are avoided. For these reasons, we adopt the view of those courts which have held that a responding state may independently determine an appropriate level of support to impose on the obligor. *See Ibach v. Ibach,* 123 Ariz. 507, 510, 600 P.2d 1370, 1373 (1979); *Ainbender v. Ainbender,* 344 A.2d 263, 265 (Del.Super.Ct.1975); *DeFeo v. De-Feo,* 428 A.2d 26, 28 (Del.Fam.Ct.1981); *Moore v. Moore,* 252 Iowa 404, 411, 107 N.W.2d 97, 101 (1961); *Commonwealth of Virginia ex rel. Halsey v. Autry,* 293 Md. 53, ——, 441 A.2d 1056, 1062 (1982); *Chisholm v. Chisholm,* 197 Neb. 828, 830, 251 N.W.2d

171, 173 (1977); *Jaramillo v. Jaramillo,* 27 Wash.App. 391, 396–97, 618 P.2d 528, 530 (1980).[4] We therefore hold that in a standard URESA action, a trial court is not bound to enforce the ongoing support provisions of a foreign decree. Instead, the court is required by Minn.Stat. § 518C.28 (1982) to apply our domestic law, which in the instant case is found in relevant part at Minn.Stat. § 518.17, subd. 4 (1982):

> The court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support, without regard to marital misconduct, after considering all relevant factors including:
>
> (a) The financial resources and needs of the child;
>
> (b) The financial resources and needs of the custodial parent;
>
> (c) The standard of living the child would have enjoyed had marriage not been dissolved;
>
> (d) The physical and emotional condition of the child, and his educational needs; and

4. Some courts, adopting a contrary view, have stated that a responding state court must conform its support order to the amount allowed in a prior action in another state. *See People ex rel. Kerl v. Kerl,* 75 Ill.App.3d 347, 349, 30 Ill.Dec. 958, 960, 393 N.E.2d 1305, 1307 (1979); *County of San Diego v. Elavsky,* 58 Ohio St.2d 81, 85, 388 N.E.2d 1229, 1233 (1979); *Bushway v. Riendeau,* 137 Vt. 455, 464, 407 A.2d 178, 182 (1979). Those courts rely on § 30 of revised URESA (codified as Minn.Stat. § 518C.19 (1982)), which provides:

   A responding court shall not stay the proceeding or refuse a hearing under this Act because of any pending or prior action or proceeding for divorce, separation, annulment, dissolution, habeas corpus, adoption, or custody in this or any other state. * * * If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the petition being heard, <u>the court must conform its support order to the amount allowed in the other action or proceeding.</u>

   9A U.L.A. 734 (1979) (emphasis added).
   Although the underlined language at first glance might imply a result contrary to that which we reach herein, we believe an understanding of the purposes of § 30 leads to the conclusion that the trial court was not bound

by the earlier New York order. According to William Brockelbank, chairman of the Special Committee on URESA for the National Conference of Commissioners on Uniform State Laws, this section "was necessary to prevent frustration of the Act through the long delays in waiting until these other matters were settled." W. Brockelbank, Interstate Enforcement of Family Support 63 (2d ed. 1971). Moreover, this section was intended to end the practice of some courts of declining to act on the ground that another court in the same jurisdiction had earlier issued an order retaining jurisdiction. We believe that the underlined language of the statute quoted above applies where a URESA and a divorce proceeding are contemporaneous, and the divorce order, setting a level of support, issued before the URESA action is concluded. In such circumstances, the URESA court should conform its order to the divorce decree, so as to avoid needlessly duplicative judicial inquiry. Where, as here, 13 years have passed since entry of the New York decree, no reason exists for requiring that current orders in a standard URESA action conform to the prior decree; the respective rights and duties of the parties should be determined by reference to their current situations, not by reference to their expectations of so long ago.

(e) The financial resources and needs of the noncustodial parent.

The parties have vigorously contested whether wrongful deprivation of visitation rights is a factor to be considered in setting the level of support. Although earlier Minnesota cases held that no child support was payable during such times as custodial parents had wrongfully removed the children from the state, *see, e.g., Hasse v. Hasse,* 232 Minn. 234, 237, 45 N.W.2d 383, 385 (1950); *Eberhart v. Eberhart,* 153 Minn. 66, 68, 189 N.W. 592, 592 (1922), our more recent cases established a case-by-case approach instead of automatic suspension of the duty to support, *see Michalson v. Michalson,* 263 Minn. 356, 357, 116 N.W.2d 545, 547 (1962); *Fish v. Fish,* 280 Minn. 316, 323–24, 159 N.W.2d 271, 276 (1968).

▮ In 1978, the Minnesota legislature extended the holding of the recent Minnesota cases by providing in Minn.Stat. § 518.612 (1982) that:

> Failure by a party to make support payments is not a defense to: interference with visitation rights; or without the permission of the court or the noncustodial parent removing a child from this state. *Nor is interference with visitation rights or taking a child from this state without permission of the court or the noncustodial parent a defense to nonpayment of support.* If a party fails to make support payments, or interferes with visitation rights, or without permission of the court or the noncustodial parent removes a child from this state, the other party may petition the court for an appropriate order.

Similarly, URESA itself provides that "[t]he determination or enforcement of a duty of support owed to one obligee [*e.g.,* child] is unaffected by interference by another obligee [*e.g.,* wife] with rights of cus-

tody or visitation granted by a court." Minn.Stat. § 518C.16 (1982). In light of this expressed policy, we conclude that deprivation of visitation is not a proper factor to consider in determining what level of support is appropriate.[5]

▮ Applying the foregoing principles to this case, we conclude that the part of the order setting ongoing support at $160 per month was not an abuse of discretion. Although we disapprove the trial court's emphasis on denial of visitation and the lack of a memorandum explaining its decision, our own examination of the records and proceedings, including the parties' relative financial positions, the projected costs of college education, and the child's scholarships and prospects for summer employment, does not indicate the sum of $160 per month is unreasonable, and it is therefore affirmed.

▮ 2. Our holding in this case, we reiterate again, does not imply that persons who have foreign support orders are unable to enforce them in this state. An obligee who relies on a foreign order and who seeks enforcement of the amount therein prescribed, without having first reduced it to judgment in the foreign state (as in *Matson I* and *Matson II*), should register the order as provided in Minn.Stat. §§ 518C.22–.25 (1982). Brockelbank has noted the distinction between standard and registered proceedings and the options open to an obligee with a foreign support order who seeks support in another state:

> The remedies of this part [Registration of Foreign Support Orders] are in addition to other remedies provided in the Act * *. This means, of course, that plaintiff has a choice. She may proceed under Part III [Civil Enforcement] and bring the ordinary reciprocal action, petition filed in the initiating state based on the duty of

---

**5.** Although not raised by the parties, we recognize that in *St. George v. St. George,* 304 N.W.2d 640 (Minn.1981), we stated that Minn.Stat. § 518.612 (1982) does not prohibit a court from raising or considering restriction of visitation rights or failure to pay support in a proceeding to enforce support obligations. *Id.* at 647, n. 1. *St. George* is not controlling here,

however, because the instant case is a URESA action, whereas *St. George* was purely domestic. Moreover, the legislature enacted Minn. Stat. § 518C.16 (1982) subsequent to *St. George.* The explicit policy statement in this recent legislation clearly prevails in a URESA action.

support growing out of the support order, mail delivery to a court in the responding state, hearing and issue of a support order *as justice may require in the latter state.*

W. Brockelbank, Interstate Enforcement of Family Support 80 (2d ed. 1971) (emphasis added) (footnotes omitted). Implicit in the emphasized portion is the view that, in a standard URESA action, a responding state is not bound to conform its order to a foreign order. The foreign order may, however, be enforced if it is registered. *See Scott v. Sylvester,* 220 Va. 182, 185–87, 257 S.E.2d 774, 776–77 (1979). Minn.Stat. § 518C.25, subd. 1 (1982), provides that, once registered, a foreign support order "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner."

Appellant in this standard URESA action seeks to recover arrearages of support which accrued month by month over a period of some 10 years, apparently on the theory that New York would require such a payment. We are not convinced New York law would do so. It may be that under New York law plaintiff's failure to object each month to defendant's failure to pay the full amount due could constitute an acquiescence or waiver of right by plaintiff. *See Robinson v. Robinson,* 81 A.D.2d 1028, 440 N.Y.S.2d 127 (1981). The circumstances of plaintiff's move to Colorado might also reduce her recovery. In 1979 New York enacted a statute which provides:

> When it appears to the satisfaction of the court that a custodial parent receiving alimony or maintenance pursuant to an order, judgment or decree of a court of competent jurisdiction has wrongfully interfered with or withheld visitation rights provided by such order, judgment or decree, the court *in its discretion,* may suspend such payments or cancel any arrears that may have accrued during the

time that visitation rights have been or are being interfered with or withheld. N.Y.Dom.Rel.Law § 241 (McKinney Supp. 1982) (emphasis added).

We see no justification for requiring a Minnesota court to do what New York itself might not do.[6] But more importantly, we believe that such difficult questions should be litigated in the more formal context of a registration proceeding rather than in the standard URESA action. The registration proceeding provides a 20-day period in which an obligor may petition the court to vacate the registration. Minn.Stat. § 518C.25, subd. 2 (1982). By this means, the obligor may present to the responding court reasons why the foreign order should not receive full enforcement. *See* W. Brockelbank, *supra* at 85–86; Note, *Enforcement of Family Support Obligations in Virginia,* 21 Wm. & Mary L.Rev. 881, 903 (1980); *cf.,* E. Scoles, *Enforcement of Foreign "Non-Final" Alimony and Support Orders,* 53 Colum.L.Rev. 817, 822 (1953) ("In any instance in which it appears that the defendant could show cause in F–1 [the issuing state] for modification, similar opportunity should be permitted in F–2 [the forum state] before enforcement is granted.") (footnote omitted).

The district court erred insofar as it purported, in a standard URESA action, to cancel accrued arrearages and to modify the New York order. Where the order had not been registered, it was not properly before the court for either enforcement or modification. In a standard action, the court independently determines what amount should be given to an obligee for current support, but such a determination leaves the New York order unaffected.

While we assume the trial court can, in a standard URESA action, order payment of past due support to the extent the plaintiff can prove the actual amount she had reasonably expended in support of the child, *Warner v. Warner,* 219 Minn. 59,

---

**6.** We need not decide in this appeal whether an award of arrearages accrued under a foreign order and then sought to be enforced in a registered URESA proceeding would turn on our own law or the law of the foreign state.

71, 17 N.W.2d 58, 64 (1944); *Beigler v. Chamberlin,* 138 Minn. 377, 379, 165 N.W. 128, 129 (1917), the responding court need not grant an award of accrued arrearages arising under a foreign order in a standard action. In this case, although the trial court's order purporting to cancel arrearages due under the New York order was plainly erroneous and a nullity, it did not abuse its discretion in declining to make an award for past support allegedly paid by the plaintiff, based on its evaluation of the evidence submitted by her as to those amounts.

Except as to the declaration purporting to amend the New York decree by cancelling arrearages, so much of the order that denied an award for past support is affirmed.

Affirmed.