In re the Marriage of Mercedes Lynn
KROGSTAD, Petitioner, Respondent,

v.

John Henry KROGSTAD, Appellant.

No. C9–85–1764.

Court of Appeals of Minnesota.

May 27, 1986.

Kenneth A. Malvey, Asst. County Atty., Hastings, for respondent.

Michael A. Feist, Jerome D. Ciresi, St. Paul, for appellant.

Heard, considered, and decided by WOZ-NIAK, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Respondent, Mercedes Krogstad, and appellant, John Krogstad, were divorced in 1975. On September 6, 1984, respondent served appellant with a motion to increase child support from $250, as set in the original decree, to the guidelines level $634.50. During the proceedings many continuances were granted. Appellant served respondent with a countermotion for change of custody of the parties' two children. The court granted the continuance, but because the court found appellant was responsible for most of the continuances, it ordered increased child support to be effective February 1, 1985, the date it granted a continuance.

The court denied appellant's motion for an evidentiary custody hearing, and on June 25, 1985, ordered child support increased to the guidelines level, a biennial cost-of-living adjustment, and wage withholding; and denied both parties' motions for attorney's fees. Appellant raises thirteen issues on appeal pertaining to support, custody, venue, and the propriety of the county attorney representing respondent in her motion to increase child support. He appeals from the judgment and decree entered December 4, 1975; the order granting a continuance dated January 24, 1985; the order for judgment entered May 13, 1985; the order denying appellant's motion for change of custody and change of venue entered June 20, 1985; and the judgment entered June 26, 1985, increasing child support.

The 1975 judgment and decree is not appealable. Minn.R.Civ.App. P. 104.01. The January 24, 1985, May 14, 1985, and

June 20, 1985, orders are appealable under *Angelos v. Angelos,* 367 N.W.2d 518 (Minn. 1985). The judgment entered June 26, 1985, is appealable under Minn.R.Civ.App. P. 103.03(a). We affirm.

## FACTS

This is a bitterly contested child support modification and custody modification case. The parties married in 1961 and divorced in 1975. At the time of the divorce, custody of their two children, then ages three and one, was granted to respondent. In 1975 appellant was employed as a technical writer earning $15,480. Respondent was employed for a portion of the year part-time as a dental hygienist earning $8,839. Respondent's uncontested expenses for herself and the children were $10,000 for 1975. Following the dissolution, appellant moved to Massachusetts where he now resides.

The decree awarded appellant a judicial lien on the parties' homestead. He enforced the lien in 1980. At that time respondent moved for increased child support. In 1980, appellant earned $25,009 and respondent earned $24,634.

In 1984 the assistant county attorney agreed to represent respondent in pursuing her current modification motion because

Mercedes has been working two part-time jobs to support the children, which puts her at an income level that is slightly higher than the usual support cases that the County Attorney's office takes. Apparently, every other time she has tried for any attorney, her funds would run out before his. Finally, in desperation, she called the County Attorney's office, since she was getting very little

help from him, and was told that they make exceptions to allow the County Attorneys to serve more of the public. Mercedes was accepted and she indicated that she received several abusive phone calls from John after he realized that she was not paying for her own attorney.

During the pendency of these proceedings, appellant twice filed professional responsibility charges against the county attorney, claiming the county attorney breached ethical rules by agreeing to represent respondent who earned, at the time, $20,000 per year. The Professional Responsibility Board dismissed all charges, finding discipline was not warranted. In his memorandum dismissing the charges, the director noted that appellant had filed similar charges against six of the attorneys associated with the dissolution and the post-decree matters.

After appellant was served with the initial child support increase motion, appellant mailed to respondent and to the Apple Valley Police Department a letter[1] stating that he believed the parties' daughter had been sexually abused while in respondent's custody. In the letter, appellant detailed an incident which occurred between his daughter, K.M.K., and his girlfriend, Lillian Boolukos, during a visit. K.M.K. was nine years old at the time.

Appellant claimed that K.M.K. must have learned this type of sexual activity while in respondent's custody. The Apple Valley Police interviewed K.M.K. at school without respondent's knowledge and later interviewed respondent. The matter was turned over to Dakota County Child Protec-

1. I believe that K.M.K. has been sexually abused. When the children were here, we spent three nights in a motel: one night in Maine, two nights in Vermont. K.T.K. [the parties' son] slept with me and K.M.K. slept with Lillian. On each of the three nights K.M.K. assumed the male role and sexually fondled Lillian at great length. This occurred early in the morning, about 5:00 a.m. K.M.K. would wake up and begin kissing, caressing, and fondling Lillian from head to foot. These gestures were not the act of a curious or timid child. These acts included many firm, deliberate kisses to the mouth and breasts, titillating touching of the torso from the breasts to and including the vulva. She would twirl Lillian's pubic hairs around her fingers at great length, often straddling Lillian in the process. K.M.K. would take Lillian's hand and place it over her own vulva in an obvious request to be similarly stimulated. She knew exactly how to raise Lillian's nightgown to expose as much of her body as she desired. This behavior can in no way be construed as normal behavior for a nine year old girl.

tion Services. Respondent arranged therapy for herself and the children.

The social worker's report states that Boolukos returned K.M.K.'s fondling and caressing. The Apple Valley Police Department considered filing criminal charges against Boolukos, but rejected that course of action because of jurisdictional problems. In September, 1984, the parties' son, K.T.K., was arrested for shoplifting, breaking and entering a neighbor's home, and firing a B.B. through a neighbor's window.

Since appellant moved out of Minnesota following the divorce, visitation has been limited to two weeks a year. Neither of the children had a history of problem behavior prior to the August, 1984, visit with appellant. According to the Child Protection Department report, the children feel hostility toward their father and do not want to visit him.

At the September 28, 1984, motion hearing, the judge granted a continuance to allow the parties to conduct additional discovery on the child support motion, specifically instructing respondent to present evidence of appellant's increased income to support her motion. On October 26, 1984, respondent requested a continuance to conduct additional discovery. On November 28, 1984, appellant discharged his attorney and the court continued the matter to January 17, 1985.

The rescheduled motion hearing was conducted by telephone conference January 17, 1985. Appellant's new counsel indicated that appellant had hired him on January 15 and counsel moved for a continuance so he could become familiar with the case. Respondent opposed appellant's continuance motion. The judge agreed to continue the hearing to February 8 provided that a modification, if ordered, would be effective February 1, 1985.

On February 5, 1985, appellant countermoved for a change of custody. He based his change of custody motion on the sexual incident between K.M.K. and Boolukos and on K.T.K.'s recent arrests, claiming custody with respondent endangered the children.

Prior to the February 8, 1985, hearing, the county attorney acknowledged that his office was not authorized to represent respondent in the custody matter. The county attorney argued that because the necessary *prima facie* showing to warrant an evidentiary hearing had not been met, and because appellant's motion for change of custody may have been a tactical decision attempting to force respondent to expend monies on a private attorney, its representation of appellant was proper. The county attorney presented to the court affidavits from K.T.K.'s probation officer and K.M.K.'s social worker. The probation officer's affidavit noted that the incidents involving the K.T.K. were not connected to respondent, and represented K.T.K.'s acting out of angry feelings toward appellant. He recommended K.T.K. be allowed to choose where he wished to live. He stated that, in his professional opinion, it would be in K.T.K.'s best interests to remain with his mother. K.M.K.'s social worker stated her concern that custody with appellant would expose K.M.K. to further sexual abuse.

On May 13, 1985, the court denied appellant's motion for an evidentiary hearing and for change of custody based on: Boolukos's sexual abuse of K.M.K. while in appellant's custody; K.T.K.'s anger and resentment towards appellant; the social worker's reports; school reports; and police reports. The court found that the children's difficulties generated from the August, 1984, visit with appellant were being dealt with appropriately in counseling and that the children's problems were not shown to be connected to respondent. The court concluded that appellant had neither shown endangerment nor met the other criteria of Minn.Stat. § 518.18(d)(iii) (1984).

At the June 14, 1985, hearing on respondent's child support motion, appellant's attorney presented the court with a letter addressed to the Board of Judicial Standards filing charges against four Dakota County judges, including the current trial judge. The attorney also presented the court with a letter to the Lawyer's Professional Responsibility Board, filing charges

against every attorney that had represented him, as well as the county attorneys representing respondent. These charges were dismissed by the board. Results of the complaints against the judges are not known and the nature of these complaints was not disclosed to the trial court. Based on all of these complaints, appellant filed a motion for change of venue to any county other than Dakota, Hennepin, or Ramsey Counties, the counties where the charged judges and attorneys practice. He also moved for an indefinite delay pending the outcome of the investigations. Appellant's counsel presented the court with a June 7, 1985, letter written by appellant, in which appellant discharged his counsel. Appellant is represented by different counsel on appeal.

On June 20, 1985, the court signed the findings of fact, conclusions of law, and order for judgment, increasing child support to the guidelines level, $634.50, and making extensive findings to support its conclusion that the terms of the decree are unreasonable and unfair given the substantially changed circumstances.

## ISSUES

1. Did the trial court err in modifying child support to the guidelines level?

2. Did the trial court properly order biennial cost-of-living adjustments in child support?

3. Did the trial court err in refusing to grant a custody hearing?

4. Did the trial court err in allowing the county attorney to represent respondent in matters pertaining to the custody hearing and the support modification hearing?

5. Did the trial court err in denying appellant's motion for change of venue?

## ANALYSIS

### I.

*Child supoort*

A trial court is vested with broad discretion in its determination of child support. *McCarthy v. McCarthy*, 301 Minn. 270, 272, 222 N.W.2d 331, 333 (1974). If the child support determination has a "reasonable and acceptable basis in fact and principle, this court will and must affirm." *Bollenbach v. Bollenbach*, 285 Minn. 418, 175 N.W.2d 148 (1970) cited in *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983).

■ To obtain a modification of child support, the custodial parent must first show one of the statutory grounds for modification, the threshhold test, and must then show that changed circumstances make the original decree unreasonable and unfair. *See* Minn.Stat. § 518.64, subd. 2 (1984); *Derence v. Derence*, 363 N.W.2d 86, 88 (Minn.Ct.App.1985). This court will not reverse a child support modification absent a showing that the court abused its broad discretion. *Johnson v. Johnson*, 304 Minn. 583, 584, 232 N.W.2d 204, 205 (1975).

The trial court properly found appellant's child support obligation of $125 per child per month under the 1975 judgment and decree unreasonable and unfair based on appellant's substantially increased earnings and the children's substantially increased needs.

The court made findings on both parties' incomes for 1975, 1980, 1984, and respondent's first half 1985 income, as follows:

|            | 1975     | 1980     | 1983     | 1984     | First half 1985 |
|------------|----------|----------|----------|----------|-----------------|
| Appellant  | $15,480  | $25,009  | $31,898  | $35,670  | (No finding)    |
| Respondent | $ 8,839  | $24,364  | $18,621  | $26,727  | $10,940         |

Appellant argues that the court must use 1980 as the base line year, since respondent moved for a modification and it was denied by the court. In its order, the trial court stated:

A motion for post-judgment relief was sought by Petitioner [Respondent on appeal] in 1980, requesting, *inter alia,* an increase in child support. Petitioner abandoned her 1980 motion for an increase in support and did not present evidence on that issue. The Court's October 16, 1980, order reserved the issue of an increase in child support.

We do not address that issue because the trial court did not consider respondent's child support motion in 1980. *See Blomgren v. Blomgren,* 386 N.W.2d 378 (Minn. Ct.App.1986).

Appellant claims the court improperly compared two time periods to determine changed circumstances. He points to findings of fact no. 8, 10, and 11:

8. The earnings of both parties have increased substantially since the date of the dissolution. However, from 1980 to 1984, Respondent's annual earnings have increased by more than $10,000 while Petitioner's annual earnings have increased approximately $2,000.

\* \* \* \* \* \*

10. The needs of the parties' two children have substantially increased, from $10,000 in 1975 to $18,167.70 in 1984. In addition, Petitioner will be responsible for more than one-half of $2,655.00, representing orthodontia for K.M.K. Respondent's insurance will pay the remainder.

11. Petitioner is providing housing for herself and the children by making payments on two mortgages, both of which have fixed interest rates.

It is not an inevitable conclusion, reviewing these findings, that the court compared income increases from 1980 to 1985 with expenses for 1975 and 1985. The findings and conclusions indicate the court compared the entire time span from 1975 to 1985.

■ Appellant claims the trial court erred by failing to take into account the fact that the cost of living is higher in Massachusetts, where he lives, than in Minnesota, where respondent and the children live. There is no authority in Minn.Stat. § 518.64 (1984) for the proposition that a high cost of living in the obligor's state of residence, alone, is a factor to be taken into consideration in determining whether modification is appropriate. Arguably, appellant could claim the higher cost of living increases his need. However, appellant did not so argue and we find no abuse of discretion.

Appellant entered into evidence a 1980 table from U.S. News & World Report, comparing the cost of living in Boston to that of the Minneapolis-St. Paul area, showing a higher cost of living for Boston. The table indicates that a Boston family of four, in 1980, could live in moderate comfort on $24,381. Appellant, who has not remarried, earned $25,009 in 1980, belying his claims that he was living at subsistence level. Moreover, the child support guidelines take inflated cost of living into account and provide for downward deviations where an obligor meets the burden of proof. Appellant did not move for a downward deviation.

Appellant claims the court erred in finding changed circumstances because part of respondent's increased need arises from her remortgaging the homestead in 1980 to satisfy appellant's judicial lien. The court considered that information when it made its finding of changed circumstances.

■ Appellant claims the increase in child support, based in part on respondent's increased mortgage expense, forces him to subsidize payment of his judicial lien on the homestead and constitutes a modification of the property division. We do not agree. Respondent's total monthly payment on the two mortgages is $580. Two hundred forty-two dollars of this represents the second mortgage. Moreover, the determination of child support is based on obligor's income and the number of children and not necessarily on how obligee spends her income. Consideration of this expense was within the trial court's discretion and we affirm.

Appellant argues that the trial court erred in relying on false and perjured state-

ments allegedly made by respondent concerning her income in her 1984 affidavit. Appellant's initial affidavit, submitted with her motion, stated her monthly net at $1,250. Appellant argued that her monthly gross was $2,200. After conducting additional discovery, during which time respondent's work hours were reduced by her employer, respondent reported her gross for January through May, 1985, was $10,-940.50. The trial court made extensive findings on both parties' incomes and relied on all of the evidence presented. We cannot say that the court abused its discretion, nor, in the absence of any evidence or finding by the trial court, that the affidavit statements made by respondent were perjured.

■ Appellant also argues that respondent perjured herself in the 1975 divorce hearing. He asks this court to look beyond the decree to ascertain her 1975 income. We cannot. The issue of sufficiency of the evidence presented at the 1975 divorce hearing is beyond our scope of review. Minn.R.Civ.App. P. 103.03. We decline to review this issue.

Appellant claims the court erred by increasing child support where inflation was the sole factor causing the parties' needs and income to increase. This assertion is speculative. The findings made by the trial court and referred to by appellant as support for his argument are those required by law. *See Bodmer v. Pattie*, 383 N.W.2d 14 (Minn.Ct.App.1986). The trial court did not find that inflation was the cause of the parties' increased needs and expenses. The court compared the parties' incomes in 1975, 1980, 1983, and 1984, and the needs of the children in 1975 and 1984, and properly found under Minn.Stat. § 518.64, subd. 2 that, in light of appellant's increased income and the children's increased needs, the terms of the decree were unreasonable and unfair. We will not disturb this conclusion on appeal.

Appellant argues that a downward deviation from the guidelines is justified due to his higher cost of living. Appellant did not raise this issue before the trial court and

we cannot review it on appeal. In the absence of a record, the issue is beyond our scope of review. *See e.g., Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974). "We are not a trial court, and appellant is not entitled to *de novo* review of the facts on appeal." *Kenville v. Kenville,* 385 N.W.2d 398 (Minn.Ct.App.1986).

■ Appellant argues that the court's increasing his child support from $250 to $634.50 per month, a 154% increase, is *per se* unreasonable and unfair because the respondent's needs have increased by only 81%. The calculation of child support in a modification case is based on the guidelines, Minn.Stat. § 518.551, subd. 5 (Supp. 1985). *Moylan v. Moylan,* 384 N.W.2d 859 (Minn.1986). Despite the differing percentages, we find no abuse of discretion.

■ Finally, appellant argues that the court erred in setting child support retroactively to February 1, 1985, because he was not responsible for some of the delays and continuances. Backdating the child support increase to the date appellant moved for a continuance is not a retroactive increase in child support within the meaning of Minn.Stat. § 518.64, subd. 2. *Alvord v. Alvord,* 365 N.W.2d 360, 363 (Minn.Ct.App. 1985). We agree with *Alvord* that "[t]he opposing party should not be entitled to profit by the delay. Our holding allows the trial court some discretion in fashioning relief." *Id.* We hold that the trial court did not abuse its discretion in modifying child support in accordance with Minn.Stat. § 518.551, subd. 5.

At oral argument, appellant informed this court that, since entry of the amended judgment, he had been fired from his job. He noted that he and respondent arrived at an extra-judicial modification of support where he paid the guidelines percentage of his unemployment compensation check. That information, while undisputed at oral argument, was not part of the trial court record on appeal. Any post-judgment private negotiations between the parties are simply not before us on review. If appel-

lant can show that his income has again changed substantially, but now in a downward manner, the appropriate remedy is a motion before a trial court. *See Dent v. Casaga,* 296 Minn. 292, 208 N.W.2d 734 (1973).

## II.

### Cost of Living Adjustment

■ Appellant argues the court erred in ordering a cost-of-living (COLA) increase because appellant's cost of living is higher due to the fact that he lives near Boston, and because his wages are not subject to a cost-of-living increase.

We agree with respondent's contention that the court's failure to accept the U.S. News & World Report 1980 statistics offered by appellant was proper. These statistics are insufficient evidence on which to deny a COLA increase. Respondent properly notes that the COLA applied by the trial court follows Family Court Rule 7.04 C. The court authorized use of the Department of Labor Consumer Price Index-Urban (CPI–U). Use of CPI–U is one of the COLA indexes authorized by Minn.Stat. § 518.641, subd. 1 (1984). We hold that the trial court's order contains the proper indicator of the COLA increase. *See Thielbar v. Defiel,* 378 N.W.2d 643 (Minn.Ct.App. 1985).

Moreover, both the record and the amended judgment and decree indicate that appellant received regular pay increases sufficient to subject his support obligation to a COLA increase. In 1980, he earned $25,009; in 1983, he earned $31,898.14; and in 1984, he earned $35,670.53. The trial court did not err in ordering a cost-of-living adjustment, given these factors.

## III.

### Denial of Custody Hearing

■ In a motion for change of custody, the burden is on the movant

to establish satisfactorily on a preliminary basis that there has occurred a significant change of circumstances from

the time when the original or amended custody order was issued. Moreover, the significant change of circumstances must endanger the child's physical or emotional health or the child's development. *See* Minn.Stat. § 518.18(d) (iii) (1980)).

*Nice-Petersen v. Nice-Petersen,* 310 N.W.2d 471, 472 (Minn.1981) (citation omitted). In *Nice-Petersen,* the court held that where the affidavits submitted do not set forth sufficient change in circumstances to justify modification of custody, the court need not grant an evidentiary hearing. *Id.*

Appellant claims he is entitled to an evidentiary hearing based on (1) the behavioral changes he noticed in the children during visitation, (2) juvenile delinquency charges brought against K.T.K., (3) a dramatic decline in the K.T.K.'s grades, (4) K.M.K.'s behavior which allegedly indicates sexual promiscuity and/or abuse.

The court's denial of appellant's motion for an evidentiary hearing was based in part on the court services study which found that K.M.K. had been sexually abused by appellant's girlfriend while in appellant's custody.

In denying appellant's motion for an evidentiary hearing, the court found appellant had not made the *prima facie* showing required by *Nice-Petersen.* The court found that the children's problems stemmed from their feelings about visiting their father; that K.M.K. was sexually abused while in the father's care; that the children's behavior was unrelated to respondent; and that respondent had dealt with the problems through appropriate counseling. We hold that the trial court properly denied appellant's motion for an evidentiary hearing. Appellant did not meet the burden necessary for a custody hearing.

## IV.

### County Attorney Representation

The county attorney has represented respondent throughout these proceedings. Appellant argues on appeal that the trial court erred in allowing the county attorney

to represent respondent both in her child support motion and in her defense against appellant's countermotion for change of custody. Appellant argues that respondent's receipt of free legal services should have, under Minn.Stat. § 518.641, subd. 2, been considered when the court modified support. Appellant also argues that because respondent received legal representation from the county attorney, respondent should reimburse appellant for his legal fees for the hearings and on appeal. We do not agree.

██ The county attorney is authorized to represent a custodial parent in support of matters even if the parent is not a recipient of public assistance. *St. George v. St. George*, 304 N.W.2d 640 (Minn.1981). *See* 42 U.S.C. § 654(6) (1982); Minn.Stat. § 393.07, subd. 9 (1984); 45 C.F.R. § 302.33 (1985). We hold that the county attorney properly represented respondent in her motion for increased child support and that the trial court did not abuse its discretion in setting support at the guidelines level.

██ Appellant argues that the county attorney could not lawfully represent respondent in her opposition to his motion to change custody. The history of county attorney representation in nonpublic assistance cases is traced in *St. George*, which held that

> considerations of judicial economy and the need for the expeditious resolution of parental rights and obligations require that we expand the rationale of [*Illinois ex rel. Shannon v. Sterling*, 248 Minn. 266, 80 N.W.2d 13 (1956)] and conclude that the county attorney may represent custodial parents as to visitation matters that arise in conjunction with the enforcement of support obligations.

*St. George*, 304 N.W.2d at 646. We hold that the rationale in *St. George* extends to this situation where the county attorney was initially retained to represent respondent in a child support matter where custody issues arose, by way of countermotion, in conjunction with the enforcement of appellant's support obligation. Our reason is similar to that espoused by the *St. George*

court which considered the issue of bifurcating child support issues from visitation issues:

> The retention of public counsel for the support hearings and private counsel for the visitation hearings would, however, entail unnecessary procedural complexity, delay, and expense. In addition, we recognize that, unlike maintenance obligations, support obligations and visitation rights share a common focus, that being the child or children involved. Because of that shared focus, issues of visitation rights are frequently raised in support enforcement proceedings. The court's concern in enforcement of either visitation rights or support obligations is the physical and mental well-being of the children. In order to assess what action will assure that well-being, the court must be in a position to assess the merits of each party's position as to support and visitation. A bifurcated process would not be as effective in permitting the court to balance the physical needs of the child associated with support and the psychological needs of the child associated with visitation. Accordingly, we believe it more prudent to permit the county attorney's office to continue its representation of a custodial parent as to visitation matters when visitation becomes an issue in support enforcement proceedings.

*Id.* at 647 (footnote omitted).

We do not decide whether the county attorney could have represented respondent in the event the trial court had ruled that appellant had made a *prima facie* showing requiring a custody hearing. However, the *St. George* rationale favoring judicial economy, expeditious resolution of parental rights, and considerations of the children's right to support, support the county attorney's representation of respondent in this matter.

## V.

*Venue*

██ Appellant claims that the court erred in denying his motion for change of

venue. He claims he could not get a fair trial in Dakota, Hennepin, or Ramsey Counties because he filed board claims against four Dakota County judges, and against attorneys officed in Dakota, Hennepin, and Ramsey Counties.

Appellant also claims that he could not get an impartial hearing before the judge who heard the child support modification and custody change motions. Appellant claims the court "grew restless" with the numerous continuances. As additional evidence of bias, appellant points to the "retroactive" increase in child support. Since we have held that making the child support increase effective February 1, 1985, was not a "retroactive" increase, we do not accept appellant's contention that this order demonstrated bias. The court acted properly. Upon being presented with a copy of the first page of appellant's letter to the Board of Judicial Standards, which gave no indication of what charges were being leveled against the judges, the court properly refused to change venue.

Venue in family law cases is governed by Minn.Stat. § 518.09 (1984) which holds venue proper in the county where either spouse resides:

> This venue shall be subject to the power of the court to change the place of hearing by consent of the parties, or when it appears to the court that an impartial hearing cannot be had in the county where the proceedings are pending, or when the convenience of the parties or the ends of justice would be promoted by the change.

We hold that the court properly denied appellant's motion for change of venue. Appellant did not meet his burden of showing either that an impartial hearing could not be had or that the ends of justice would be promoted by the change.

### DECISION

The trial court did not err in assessing child support at the guidelines level. The court properly denied appellant's motions for a custody hearing and for a change of venue. The county attorney properly represented respondent in these proceedings.

Affirmed.