STATE EX REL. Laurie JESKE n/k/a Laurie Wagner, Appellant-Respondent,

v.

William J. JESKE, Respondent-Petitioner.

Supreme Court

*No. 86–1894. Argued March 29, 1988.—Decided June 8, 1988.*

(Also reported in 424 N.W.2d 196.)

For the respondent-petitioner there were briefs by *Robert P. Rusch* and *Rusch & Rusch Law Office, S.C.,* Medford and oral argument by *Robert P. Rusch.*

For the appellant-respondent the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

STEINMETZ, J.   The issue in this case is whether the state of Wisconsin, by the Price county child support agency, has the authority to represent a custodial parent and her child by bringing a motion on their behalf to modify a previously entered child support order when neither the custodial parent nor the minor child receive public assistance and when the noncustodial parent is not in arrears in his child support obligations. We conclude that in this case the state may do so.

The dispute in this case arises from the fact that Laurie Jeske (now known as Laurie Wagner) and her child were represented by the Price county district attorney, who was acting in her capacity as the county child support program director. William Jeske, the father of the child, contends that the county child

support agency lacks the authority to represent a custodial parent who does not receive Aid for Dependent Children (AFDC) in actions to modify support orders when the obligor parent is current in previously ordered support payments. On May 1, 1986, Laurie Jeske filed a notice of motion and motion for revision of judgment with the Price county circuit court pursuant to sec. 767.32(1), Stats,[1] requesting an increase in the amount of child support to be paid by her former husband, William. It is undisputed that neither Laurie nor her child received any form of public financial assistance at the time this action was commenced. It is further undisputed that William Jeske was in compliance with the support order at that time.

Upon Mr. Jeske's motion, Judge Douglas T. Fox, circuit court judge for Price county, dismissed Laurie

---

[1]Sec. 767.32(1), Stats., provides, in pertinent part, as follows:

"**767.32 Revision of judgment.** (1) After a judgment providing for child support under s. 767.25, maintenance payments under s. 767.26 or family support payments under s. 767.261, or for the appointment of trustees under s. 767.31 the court may, from time to time, on the petition of either of the parties, or upon the petition of the department of health and social services, a county department under s. 46.215, 46.22 or 46.23 or a child support agency if an assignment has been made under s. 49.19(4)(h) or 49.45(19) or if either party or their minor children receives aid under ch. 49, and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such maintenance or child support and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any judgment respecting any of the matters which such court might have made in the original action, except that a judgment which waives maintenance payments for either party shall not thereafter be revised or altered in that respect nor shall the provisions of a judgment with respect to final division of property be subject to revision or modification ...."

Jeske's motion for revision.[2] The court held that the statutes do not authorize the district attorney to act on behalf of an obligee in any action to modify the provisions of a prior divorce judgment as it pertains to child support.

The court of appeals reversed the trial court decision and held that the state of Wisconsin does have the authority to represent a parent seeking child support modification when neither the parent nor the child receives public assistance. *State ex rel. Jeske v. Jeske,* 138 Wis. 2d 268, 405 N.W.2d 757 (Ct. App. 1987). The court of appeals based its decision in part on a federal district court case, *Carter v. Morrow,* 562 F. Supp. 311 (W.D. N.C. 1983), which held that the federal child support enforcement program, 42 U.S.C. sec. 651 *et. seq.,* requires states to provide nonwelfare clients the same services as those receiving welfare. Because sec. 767.32(4), Stats.,[3] provides AFDC recipients with representation in actions to modify child support, the court of appeals concluded that the state was not only authorized to represent Laurie Jeske, but was required to do so.

The resolution of this case requires a construction of various statutes and thus presents questions of law.

---

[2]The record does not indicate why the trial court dismissed Laurie Jeske's action rather than merely direct her to retain private counsel. Because the disposition of this case in effect reinstates the petition, we do not decide the appropriateness of the trial court's dismissal of the petition.

[3]Sec. 767.32(4), Stats., provides as follows:

"In any case in which the state is a real party in interest under s. 767.075, the department of health and social services shall review the support obligation periodically and whenever circumstances so warrant, petition the court for revision of the judgment with respect to the support obligation."

Questions of law are reviewed independently without deference to determinations of the trial court or the court of appeals. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987).

In 1974, Congress added Title IV, Part D to the Social Security Act through Pub. L. No. 93–647, 88 Stat. 2351 (codified as amended at 42 U.S.C. sec. 651 *et seq.* (1976 & Supp.)). The IV-D amendment established a Child Support Enforcement Program "for the purpose of enforcing the support obligations owed by absent parents to their children ... , locating absent parents, establishing paternity, and obtaining child and spousal support." 42 U.S.C. sec. 651.

The act requires each state to develop and implement a plan, subject to federal approval, for delivery of child support program services in order to qualify for federal funds in providing the services. The act specifies in considerable detail what the plan shall contain. *See* 42 U.S.C. sec. 654. Once a state's plan is federally approved, the state is reimbursed by the federal government for a substantial portion of the costs incurred in carrying out the program. *See* 42 U.S.C. sec. 655(a). Thus, while this legislation is not binding on the states, the receipt of federal aid is conditioned upon a state's development and implementation of an approved plan. *See* 42 U.S.C. sec. 654 and sec. 666.

The Wisconsin legislature responded to the enactment of 42 U.S.C. sec. 651 *et seq.* by passing several statutes to comply with the federal act. *See, e.g.,* secs. 46.25, 49.19(4), 49.45(19), 59.47(14) and 59.07(97), Stats. *See also State v. Wagner,* 136 Wis. 2d 1, 400 N.W.2d 519 (Ct. App. 1986).

The child support program in Wisconsin is administered by the Department of Health and Social

Services with the cooperation of the counties. The program establishes paternity and child support and enforces court support orders for children receiving aid to families with dependent children (AFDC) and for any other child whose custodian applies for services, sec. 46.25(1), Stats. This section provides as follows:

"**46.25 Child and spousal support; establishment of paternity; medical liability.** (1) There is created a child and spousal support and establishment of paternity and medical liability support program in the department. The purpose of this program is to establish paternity when possible, to enforce support obligations owed by parents to their children and maintenance obligations owed to spouses or former spouses with whom the children reside, to locate persons who are alleged to have taken their child in violation of s. 946.71 or 946.715 or of similar laws in other states, and to locate and value property of any person having a support duty. To accomplish the objectives of this program and of other assistance programs under ch. 49, county and state agencies will cooperate with one another to implement a child and spousal support and paternity establishment program in accordance with state and federal laws, regulations and rules and to assure proper distribution of benefits of all assistance programs authorized under ch. 49."

Section 46.25(7), Stats., at issue in this litigation, provides:

"The department may represent the state or any individual in any action to establish paternity or to establish or enforce a support or maintenance obligation. The department may delegate its au-

369

thority to represent the state or any individual in any action to establish paternity or to establish or enforce a support or maintenance obligation under this section to the district attorney, or corporation counsel when authorized by county board resolution, pursuant to a contract entered into under s. 59.07(97). The department shall ensure that any such contract is for an amount reasonable and necessary to assure quality service. The department may, by such a contract, authorize a county to contract with any attorney, collection agency or other person to collect unpaid child support or maintenance. If a county fails to fully implement the programs under s. 59.07(97), the department may implement them and may contract with any appropriate person to obtain necessary services. The department shall establish a formula for disbursing funds appropriate under s. 20.435(4)(p) to carry out a contract under this subsection."

Section 46.25(7), Stats., is ambiguous. The phrase "to establish or enforce a support or maintenance obligation" could be interpreted to mean, as William Jeske argues, only those actions establishing an initial award and enforcing that award. However, this language can refer also to actions seeking to establish an order to modify child support. It is undisputed that relevant statutes permit the department to represent nonwelfare clients to court actions to establish and enforce support obligations.

The district attorney is directed to cooperate, as necessary, with the department in establishing and enforcing child support. Secs. 59.07(97)[4] and 59.47(14),

---

[4]Sec. 59.07(97), Stats., provides as follows:

"(97) CHILD AND SPOUSAL SUPPORT; PATERNITY PROGRAM; MEDICAL SUPPORT LIABILITY PROGRAM. The coun-

Stats. Section 46.25(1) requires the program to operate "in accordance with state and federal laws, regulations and rules."

The federal act expressly requires that program services be available to persons not receiving public assistance and specifically requires that a state plan must:

> "(6) provide that (A) the child support collection or paternity determination services established under the plan shall be made available to any individual not otherwise eligible for such services upon application filed by such individual with the State, including support collection services for the spouse (or former spouse) with whom the absent parent's child is living (but only if a support obligation has been established with respect to such spouse, and only if the support obligation established with respect to the child is being enforced under the plan ...." 42 U.S.C. sec. 654(6)(A) (1976 & Supp. 1987).

The question implicated under the federal act is whether 42 U.S.C. sec. 651 *et seq.* requires actual

ty board shall contract with the department of health and social services to implement and administer the child and spousal support and establishment of paternity and the medical support liability programs provided for by Title IV of the federal social security act. The board may designate by board resolution any office, officer, board, department or agency as the county designee. The board or its designee shall implement and administer the programs in accordance with the contract with the state department of health and social services. The district attorney, corporation counsel, family court commissioner, clerk of court and all other county officials shall cooperate with the county and the department as necessary to provide the services required under the programs. The county shall charge the fee established by the department under s. 46.25 for services provided under this subsection to persons not receiving assistance under s. 49.19 or 49.47."

representation of nonwelfare clients in actions to modify support in order to comply with the provision of sec. 654(6)(A) that "child support collection ... services ... be made available" to individuals not eligible to receive public aid.

The precise meaning of 42 U.S.C. sec. 654 is not clear on its face; thus we must attempt to determine legislative intent by examining the act's context, subject matter, scope, history and purpose. *See Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 649 (1985).

The Child Support Enforcement Amendments of 1984, Pub. L. No. 98–378 are the most recent comprehensive congressional statements of legislative intent with respect to the federal child support law as it relates to the states. The Senate report on the 1984 amendments stated the following:

> "There is no language in the purpose clause spelling out that services are to be provided to both AFDC and non-AFDC families. However, there is a specific provision elsewhere in the statute requiring that the child support collection or paternity determination services established under a state's child support program 'shall be made available to any individual not otherwise eligible for such services upon application filed by such individual ....' The Committee is proposing to add language to the present clause as follows: 'and assuring that *assistance in obtaining support* will be available under this part to all children (whether or not eligible for aid under part A) for whom such assistance is requested.' This language will make clear the Committee's intent that the Administration and the States fully implement the provision in present law that requires the States to make

available to non-AFDC families the services that
are provided under the State program for AFDC
families." S. Rep. No. 387, 98th Cong., 2d Session,
*reprinted in* 1984 U.S. Code Cong. & Admin. News
at 2418. (Emphasis added.)

The amendment to the "Purpose" section of Title IV-D
was meant to re-enforce the language of 42 U.S.C. sec.
654(6), so that assistance in obtaining support would
be provided to non-AFDC families.

While it is unclear whether the terms "support
collection" services and "assistance in obtaining sup-
port" include representation for efforts to modify an
existing order, it would seem that such an interpreta-
tion is consistent with congressional intent. The
Senate report to the 1974 legislation indicated that
the IV-D program was designed to help children attain
the right to receive support from their noncustodial
parents.

Moreover, another indication at least supporting
the contention that Congress intended to require
states to represent non-AFDC families in modification
proceedings is found in the Code of Federal Regula-
tions at 45 C.F.R. sec. 303.4, entitled "Establishment
of Support Obligations." This section states:

"For all cases referred to the IV-D agency or
applying under sec. 302.33 of this chapter, the IV-D
agency must: ... (c) Review the support obligation
periodically and whenever the IV-D agency be-
comes aware of changes in the factors which
determine the amount of the support obligation."

Title 45 C.F.R. sec. 302.33 refers to non-AFDC
families; the code appears to require at least a periodic
review by the agency of the support obligations of
certain non-AFDC families. The face of the regulation

does not specifically mandate representation for support modification efforts; it only requires review of established support obligations. However, when this provision of the code is examined in conjunction with state legislation, the position urged by the state and Laurie Jeske are more persuasive.

Section 767.32(4), Stats., provides that when the state is the real party in interest, *i.e.*, whenever public aid is provided to a dependent under secs. 49.19 or 49.45, "the department of health and social services shall review the support obligation periodically and whenever circumstances so warrant, petition the court for revision of the judgment with respect to the support obligation." Because the state plan requires the child support agency to represent AFDC clients in their modification efforts, we conclude that under 42 U.S.C. sec. 654, this representation is one of the child support collection services which must be made available to non-AFDC clients. Thus, while the federal act does not specifically require states to represent any parent in efforts to revise established support orders, because this state has chosen to extend these services to AFDC recipients, it must likewise extend the services to non-AFDC applicants. As the federal district court stated in *Carter:*

> "Congress required the states to make available to non-AFDC recipients '*the* child support collection or paternity determination services established under the [state IV-D] plan ....' 42 U.S.C. sec. 654(6)(A) (emphasis added). These words are clear and unequivocal: the state IV-D programs must provide to non-welfare clients *the services*—not some other services—afforded to persons receiving welfare. Nothing in Title IV-D or its legislative

history contradicts this plain reading of the statutory language." 562 F. Supp. at 315.

Furthermore, as the *Carter* court observed:

> "Congress *has* recognized that the individual and governmental interests in the IV-D program are somewhat different in the case of non-recipients of welfare. However, Congress has taken this difference into account not by allowing the states to provide different services to non-welfare applicants, but by allowing them to charge those persons a reasonable application fee and to collect costs in excess of the fee from the parent who owes the support obligation or, in limited circumstances, from the applicant. 42 U.S.C. sec. 654(6)(B) & (C) . . . ." *Id.*

Section 46.25(6), Stats.,[5] expressly provides for the establishment and collection of fees from nonwelfare clients for services rendered under the child support section. Thus, contrary to William Jeske's claim, Laurie Jeske is not necessarily receiving the services of a government-paid attorney.

Moreover, William's fear that providing Laurie with a county attorney will spawn continuous and vindictive litigation is unfounded.[6] Section 49.25(9),

---

[5]Sec. 46.25(6), Stats., provides as follows:

"The department shall establish, pursuant to federal and state laws, rules and regulations, a uniform system of fees for services provided under this section to individuals not receiving aid under s. 49.19 or 49.47. The system of fees may take into account an individual's ability to pay. Any fee paid and collected under this subsection may be retained by the county providing the service except for the fee specified in 42 USC 653(e)(2) for federal parent locator services."

[6]William Jeske's standing to challenge the state's representation of his former wife was not briefed and is not an issue considered on appeal.

Stats., requires the child support agency to establish standards and financial guidelines for courts to consider in determining child support obligations. Consequently, if an applicant requests assistance with a revision of support and seeks an amount which falls outside of the established guidelines, nothing in the state or federal law requires the agency to petition the court or to represent the individual.

Finally, with respect to William Jeske's contention that sec. 767.32(1), Stats., controls this case and prohibits the state from representing Laurie Jeske, we conclude that Mr. Jeske misinterprets that statute. As Laurie Jeske points out, this section merely limits the state when bringing an action to modify support of its own initiative to cases where either an assignment of the action is made by the custodial parent or the state is a real party in interest because the custodial parent or minor receives public aid. The statute is silent as to whether state representation is authorized when non-aid recipients bring an action at their own request. In this case, Laurie Jeske initiated the modification efforts; thus, sec. 767.32(1) neither bars the state from representing her nor determines the issue presented.

In sum, we hold that, while the federal legislation itself does not specifically require states to represent nonwelfare clients in modification efforts, because the state legislature has chosen to extend these services to AFDC clients when appropriate, it must, consistent with 42 U.S.C. 654(6)(A), offer the same services to non-AFDC parents. The same procedures and guidelines established for AFDC recipients with respect to reviewing support orders for modification purposes and representing the applicant when circumstances warrant it are extended to non-AFDC custodial par-

ents. The agency can recover any representation fees to which it is entitled under the provision of sec. 46.25(6), Stats.

*By the Court.*—The decision of the court of appeals is affirmed.

LOUIS J. CECI, J. (dissenting). I dissent for the reason that I do not believe that the state is either authorized or required to represent a non-AFDC recipient for the modification of a child support order. My disagreement with the majority's analysis of sec. 46.25(7), Stats., commences with its determination that it is ambiguous. Section 46.25(7) provides for state representation to any individual "to establish or enforce a support or maintenance obligation." This section delineates those services for which representation will be provided and unambiguously excludes representation for modification. Because the legislature specifically defined those services for which it would provide representation, the doctrine of *expressio unius est exclusio alterius* should apply as an indication that the services not included within the express enumeration were intended to be excluded. *See, e.g., State ex rel. Harris v. Larson,* 64 Wis. 2d 521, 527, 219 N.W.2d 335 (1974).

Additionally, I disagree with the majority's position that the fact that the state provides services for the modification of support obligations to public assistance recipients pursuant to sec. 767.32(4), Stats., requires the provision of such services to nonrecipients as a condition of federal aid. In this regard, I note that sec. 46.25(1), indicates that the provisions of its child support program are to be fashioned in accordance with federal statutes and regulations. However, the federal assistance law set forth under 42

U.S.C. sec. 654(6)(A) does not, as a condition for the receipt of federal assistance, require a state to provide representation to non-AFDC recipients for the modification of child support awards. Rather, sec. 654(6)(A) provides that the state must provide "child support collection" services established under the state's child support plan to individuals who are not eligible for such aid. Neither the provisions of 42 U.S.C. sec. 654 which set forth that which must be contained within a state's child support plan, nor the provisions of sec. 46.25, which articulates Wisconsin's plan consistent with the federal law, requires representation for modification of support awards. While sec. 767.32(4), provides for state representation for support award modification, this provision is not within the plan articulated under sec. 46.25 which triggers the equality of services provisions of sec. 654(6).

Interestingly, the majority has failed to cite to any authority which supports its position that the provision of services for the modification of a child support award is included within the provisions of 42 U.S.C. sec. 654(6). In fact, the only case which I have been able to locate which interprets sec. 654(6) to include modification services is a decision of the Minnesota Court of Appeals in *Krogstad v. Krogstad,* 388 N.W.2d 376, 384 (Minn. Ct. App. 1986), which decided this issue without supporting analysis.

Finally, the chronology of the enactment of the Wisconsin statutes relating to child support services reinforces an interpretation of sec. 46.25(7) which does not include modification services to non-AFDC recipients. Specifically, sec. 46.25(7) was enacted in 1979, pursuant to ch. 221, sec. 362, laws of 1979, whereas sec. 247.32(4), Stats. (renumbered as sec. 767.32(4)), was adopted in 1977 under ch. 418, sec. 747s, laws of

1977. Accordingly, when sec. 46.25(7) was adopted with language referring to the establishment and enforcement of child support obligations, there existed in place a scheme under sec. 767.32 which segregated "revisions" of judgments from provisions related to the establishment and enforcement of child support. It is a well-established proposition that the legislature is presumed to enact legislation with "full knowledge and awareness of existing statutes." *State ex rel. McDonald v. Douglas County,* 100 Wis. 2d 569, 578, 302 N.W.2d 462 (1981). Had the legislature intended to include modification of child support awards within the child support services provided to non-public assistance recipients under sec. 46.25(7), surely the legislature would have specifically used the language of "revision" or "modification," as it had elsewhere.

Accordingly, I dissent for the reason that I believe the majority has broadened the scope of the state's authority or duty to represent non-AFDC recipients beyond the scope of both state and federal law. It should be noted that the fiscal ramifications of this unwarranted tinkering are unknown.