**James Richard THURMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, CABINET for HUMAN RESOURCES, ex rel. Susan Carol Rogers THURMAN, Appellee.**

No. 90–CA–001616–MR.

Court of Appeals of Kentucky.

March 27, 1992.

Jack W. Flynn, Darnell & Flynn, Frankfort, for appellant.

C. Thomas Watkins, Asst. Franklin County Atty., Frankfort, for appellee.

Before LESTER, C.J., and EMBERTON and HUDDLESTON, JJ.

HUDDLESTON, Judge.

This is an appeal from an order adopting the recommendation of a domestic relations commissioner that James Thurman be required to pay $31,300.00 in child support arrearages. James argues on appeal that the Cabinet for Human Resources had no standing to enforce the divorce decree between him and Susan Carol Rogers Thurman and that the trial court abused its discretion in assessing interest on the award.

James and Susan were married in 1971. At the time their marriage was dissolved in 1979, their only child was 8 years old. Susan was granted custody of the child and James was ordered to provide $50.00 per week in child support, to be increased by $5.00 per year.

In 1989, the Cabinet for Human Resources filed this action on behalf of Susan Carol Rogers Thurman to collect child support arrearages. Susan had assigned to

the Cabinet her right to enforce current and past-due payments. Prior to the time the suit was filed, the child had reached its eighteenth birthday.

The matter came before a domestic relations commissioner, who, relying on KRS 205.710 through 205.800 and 42 U.S.C. § 654(6), determined that the Cabinet had standing to bring this action on Susan's behalf. The commissioner's recommendations were confirmed on January 4, 1990. On February 27, 1990, the trial court ordered James to pay $31,300.00, after he was given credit for periods during which the child did not reside with either parent. On June 27, 1990, the court finalized its decision by adopting another recommendation of the domestic relations commissioner that James be required to pay 12% interest on the award commencing as of the date it was made, February 27, 1990. This appeal followed.

 James argues, as he did before the trial court, that the Cabinet has no standing to enforce the child support obligation because Susan never applied for or received public assistance on behalf of the child. This argument finds no support in the applicable statutes.

KRS 205.010 *et seq.* contain significant and comprehensive child support recovery provisions. KRS 205.712 provides, in pertinent part:

> (1) The division of child support enforcement is established in the cabinet for human resources.
> (2) The duties of the division of child support, or its designee, shall include:
> * * * * * *
> (c) Serve as collector of all court-ordered or administratively ordered child support payments pursuant to Part D of Title IV of the Social Security Act; and
> (d) Enforce Kentucky child support laws, including collection of court-ordered child support arrearages and prosecution of persons who fail to pay child support.

In addition, KRS 205.721 provides, in part:

> (1) All services available to individuals receiving aid to families with dependent children (AFDC) benefits shall also be available to individuals not receiving AFDC benefits, upon application by the individual with the cabinet.
>
> * * * * * *
>
> (3) Except as provided in subsection (2) of this section, the cabinet may charge an application fee for the services based on a fee schedule, which shall take into account the applicant's net income. No application fee shall be required from individuals receiving public assistance.

It is clear from these statutes that child support collection services are available to a parent, even though that parent does not receive Aid for Families With Dependant Children (AFDC) benefits. It is equally clear that the Cabinet is required to collect court-ordered child support arrearages.

Both parties rely on 42 U.S.C. §§ 651–667, which is Chapter 7, Subchapter IV, Part D, of the Social Security Act, a section commonly referred to as the "IV–D Program". The IV–D amendment established a Child Support Enforcement Program.

> For the purpose of enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse) with whom such children are living, locating absent parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (*whether or not eligible for aid under part A of this subchapter*) for whom such assistance is requested, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. 42 U.S.C. § 651. (Emphasis supplied.)

The Act requires that each state develop a plan, subject to Federal approval, for delivery of child support program services in order to qualify for Federal funds in providing the services. Kentucky has enacted a federally-approved plan. KRS 205.712(2) provides that the duties of the Division of Child Support, or its designee, include the obligation to:

(a) Serve as state agency authorized to administer Part D Title IV of the Social Security Act, 42 U.S.C. 651 to 667;

\* \* \* \* \* \*

(c) Serve as collector of all court-ordered or administratively ordered child support payments pursuant to Part D of Title IV of the Social Security Act....

Section 654 of the Act specifies the plan contents. While the Act is not binding on states which do not elect to participate and receive federal reimbursement, once a state's plan is federally approved, that state is reimbursed by the Federal government for a large part of the costs incurred in providing the services. 42 U.S.C. § 655(a).

Section 654(6) of the Act requires that a state plan for child and spousal support must:

... provide that (A) the child support collection or paternity determination services established under the plan shall be made available to any individual not otherwise eligible for such services upon application filed by such individual with the State, including support collection services for the spouse (or former spouse) with whom the absent parent's child is living (but only if a support obligation has been established with respect to such spouse, and only if the support obligation established with respect to the child is being enforced under the plan)
....

James urges a construction of this section which would require the child to have been living with Susan at the time this action was filed and would also require, as a prerequisite to enforcement, that the support obligation with respect to the child be enforced under the plan. He argues that the "spousal support" referred to in the statute means support solely for the benefit of minor children. We do not agree with this strained construction. The statute is clear. It covers both child support *and* spousal support obligations as distinct and separate matters. Under 42 U.S.C. § 654, spousal support can be collected if a child is living with its parent. Child support can be collected at any time.

The pertinent part of the statute dealing with child support enforcement requires the state to "provide that (A) the child support collection ... services established under the plan shall be made available to any individual not otherwise eligible for such services upon application filed by such individual with the State...." The remaining portion of the paragraph deals *solely* with the enforcement of *spousal* support obligations.

This Court's function in construing a statute is to interpret the language so as to give effect to the intent of the legislature. *Wesley v. Board of Education of Nicholas County*, Ky., 403 S.W.2d 28 (1966). A review of the legislative history of § 651, which outlines the purposes of the Act, reveals that in 1984 it was amended to substitute the phrase "obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for aid under part A of this subchapter) for whom such assistance is requested" for the phrase "and obtaining child and spousal support." This amendment was intended to re-enforce the language in 42 U.S.C. § 654(6), so that assistance in obtaining support would be provided to non-AFDC families. *State ex rel. Jeske v. Jeske*, 144 Wis.2d 364, 424 N.W.2d 196 (1988).

In *Jeske*, even though the noncustodial parent was not in arrears, the local child support agency was permitted to represent the custodial parent and her child by filing a motion to modify a previous child support order. Because a state statute required the child support agency to represent AFDC clients in their modification efforts, it was held that, because of § 654(6), the same service was required to be provided to non-AFDC recipients. The custodial parent does not have to prove financial inability in order to receive appropriate services. *State v. Wagner*, 136 Wis.2d 1, 400 N.W.2d 519 (Wis.Ct.App., 1986). See also *Carter v. Morrow*, 526 F.Supp. 1225 (W.D.N.C.1981), where it was held that the North Carolina Department of Human Resources improperly failed to provide appropriate child sup-

port enforcement services, including courtroom representation, to a non-AFDC recipient in violation of 42 U.S.C. § 654(6).

We do not agree with James' contention that KRS 205.715 and KRS 205.725, dealing with Cabinet intervention when public assistance has been provided, were utilized or otherwise applied in this case.

■ Finally, James argues that the trial court abused its discretion in awarding interest on the $31,300.00 award. We disagree. KRS 360.040 provides with certain exceptions, that judgment awards shall bear 12% interest, compounded annually, from entry. In this case, interest was ordered to be computed from the date of the final judgment, February 27, 1990. The trial court could have ordered that interest accrue from the date that each child support payment was due. *Young v. Young*, Ky., 479 S.W.2d 20 (1972). It certainly did not err in simply awarding post-judgment interest.

The order from which this appeal is taken is affirmed.

All concur.